JOHN GAINE, PROSECUTOR, v. D. FREDERICK BURNETT, COMMISSIONER OF ALCOHOLIC BEVERAGE CONTROL OF THE STATE OF NEW JERSEY, DEFENDANT.

Submitted January 17, 1939—Decided February 4, 1939.

40

Before Brogan, Chief Justice, and Justices Bodine and Heher.

For the prosecutor, *Quinn & Doremus* (*John J. Quinn* and *William F. Hanlon*).

For the defendant, *Nathan L. Jacobs.*

Bodine, J. The prosecutor of this writ brings up for review his conviction for a violation of rule 6 of regulation 30 of the State Department of Alcoholic Beverage Control. He sold whiskey below the price fixed by the commissioner.

The sale of intoxicating liquor from early times has been a regulated matter. By the laws of 1738-9, tavern keepers were obliged to apply to the justices of the peace annually in open court for a license. *Allison's Laws* 103. The justices of the peace fixed the price at which liquor was to be sold and the licensee was obliged to post, in a conspicuous place in his premises, the prices so fixed and was also subject to a penalty for a non-observance of the regulation. *Id.* 105. After the revolution, like provisions were re-enacted, together with a ban on gaming of any sort, in places where liquor was sold. *Paterson* 237, 238. The Court of Common Pleas, for a long time, under legislative direction continued to grant licenses and fixed the prices for the liquor at its spring session. *Nixon's Digest* 340, § 21; *Revision* 1846-7, 581, § 21. This provision was, however, repealed before the Revision of 1877. In that work the bulk of the act, as contained in the Revision of 1846-7, was continued with the additions of various supplements authorizing the granting of licenses in some municipalities, by township committee or common council, vesting in them discretion in the amount of licensee fees and the control of the sale of liquor.

Chapter 208, *Pamph. L.* 1938, *p.* 492, is as follows: "Whereas, Alcoholic beverage licensees have been unduly stimulating the sale of alcoholic beverages by indiscriminate price cutting, resulting in price wars, and by excessive advertising of bargain values and cut prices; these practices are

deemed detrimental to the proper operation of the liquor industry and contrary to the interests of temperance; the sale of alcoholic beverages is unusually susceptible to abuse, with resulting danger to the general public and should be strictly supervised and regulated to prevent undue stimulation of public demand for alcoholic beverages; therefore, * * * 1. The State Commissioner of Alcoholic Beverage Control is hereby vested with the following powers to be exercised in such manner as will assist in properly supervising the liquor industry and promoting temperance: The commissioner may, in his discretion, by rule and regulation, prohibit or regulate the sale of alcoholic beverages within this State in violation of any fair trade contract entered into pursuant to the legislative sanction afforded by Revised Statutes, Title 56, chapter four."

Chapter 165, *Pamph. L.* 1938, *p.* 375, referred to, purported to protect the owner of trade-marked articles from resale, except at the price fixed by contract.

After the enactment of this legislation, and pursuant to the power vested in the commissioner by the Control act of 1933 (*R. S.* 33:1), he promulgated regulation 30. Sections 6 and 7 are as follows:

"6. Whenever any such contract and price list or altered contract or price list is filed and published as aforesaid, no retail licensee shall sell any product affected thereby except (2) at the price stipulated therein by the manufacturer or wholesaler; or (b) pursuant to and within the terms, conditions and limitations of a special permit first obtained from the Department of Alcoholic Beverage Control.

"7. Application by a retail licensee for special permit authorizing the sale of any particular product affected by a Fair Trade contract without regard to the price stipulated therein will be entertained in the following situations: (a) where the product was actually possessed by the retailer prior to the execution of the Fair Trade contract; (b) where the retailer is actually closing out his stock for the purpose of discontinuing delivering such product; (c) where the product is damaged or deteriorated in quality and notice is given to

the public thereof; and (d) where the sale of the product is by an officer acting under orders of any Court."

We regard the regulation in question as a valid exercise of the commissioner's inherent power under the Control act. The act of 1938 was unnecessary to confer power to enact the regulation in question. We, therefore, need not consider any question of the constitutionality of the latter enactment.

Prosecutor argues that the 1938 statute is unconstitutional, in that it is a delegation of legislative power in violation of articles III and IV, section 1 of the State Constitution. We do not think so. His argument, however, since it would apply equally in our view of the matter, viz., to the Control act, will be considered.

The Liquor Control act of 1933 (*R. S.* 33:1), provides in section 3 (*R. S.* 33:1-3) that "it shall be the duty of the commissioner to supervise the manufacture, distribution and sale of alcoholic beverages in such a manner as to promote temperance and eliminate the racketeer and bootlegger." Section 36 (*R. S.* 33:1-39) provides that the commissioner may promulgate such rules and regulations "as may be necessary for the proper regulation and control of the manufacture, sale and distribution of alcoholic beverages and the enforcement of this act." The section enumerates subjects which might be regulated including "unfair competition" and "practices unduly designed to increase consumption of alcoholic beverages." The commissioner was authorized to promulgate regulations on "such other matters whatsoever as are or may become necessary in the fair, impartial, stringent and comprehensive administration" of the act. In section 74 (now *R. S.* 33:1-73), it was provided that the act was intended to be remedial of abuses in liquor traffic and should be liberally construed.

The powers of the commissioner are very broad and have been so construed. *Franklin Stores Co.* v. *Burnett,* 120 *N. J. L.* 596. Before the commissioner promulgated regulation 30, the sale of intoxicants was disturbed by price cutting and continual mail and house circular campaigns tending to disturb the orderly conduct of the liquor business and resulted,

in many instances, in an increased public indifference to sobriety and a wise expenditure of money. For over a hundred years, the courts of this state and its predecessor government fixed the price, under legislative permit, at which a tavern keeper should sell liquor. The state, by means of commissions and law, has fixed the price to be charged by railroads, transportation companies, investors, bankers, gas and electric companies, telegraph and telephone companies and insurance companies. Price fixing, in the purchase and sale of milk, was recently upheld in an exhaustive opinion by Mr. Justice Heher in *State Board of Milk Control* v. *Newark Milk Co.*, 118 *N. J. Eq.* 504.

The argument as to unconstitutionality seems to be because the act leaves price fixing to the volition of the commissioner. He may or may not act it is said. We think this must be so, but the granting of liquor licenses has always been vested in those who could exercise a reasonable discretion and who could impose reasonable regulation. The sale of liquor has never been, in this state, a business of right. The legislature has always granted the widest discretion to officers charged with duties with respect to the granting of liquor licenses. They have acted with discretion, *i. e.*, in the granting of licenses, the time of day and night when sales may be made, the character of the premises used, the amount of the license fee to be exacted, the prices to be charged for liquor, and countless other matters too numerous to mention. Fixing the price, at which liquor is to be sold, is an ancient method to prevent abuse in the use of a commodity of much social disadvantage. The legislative policy is clear and it provided a definite enough rule of action in the Control act. The commissioner is there charged with a duty to make the regulations necessary, in his judgment, in order to secure a fair administration of the law permitting the sale of intoxicating liquor. Nothing can promote greater fairness in the liquor trade than to fix the price of sale. All dealers and customers stand precisely on the same footing.

We do not feel called upon to consider any question of the unconstitutionality of the 1938 act under article IV, section

7, subsection (4) of the State Constitution, because the regulation complained of, as has been shown, was well within the powers of the commissioner under the Control act. See *Franklin Stores Co.* v. *Burnett,* 120 *N. J. L.* 596.

The writ will be dismissed, with costs.