EMELINE FLANAGAN, ROBERT J. MYERS, JOHN ENRIGHT, RICHARD ENRIGHT, JOSEPH MORRISON AND MARGARET CAMISA, PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE, STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued December 2, 1958—Decided January 19, 1959.

(1)

2

4

*Mr. Ralph Porzio* argued the cause for plaintiffs-appellants.

*Mr. David Landau* argued the cause for defendant-respondent (*Mr. David D. Furman,* Attorney General of New Jersey, attorney; *Mr. Theodore I. Botter,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

FRANCIS, J. The Civil Service Department dismissed plaintiffs' objections to an impending competitive examination for the position of Chief Probation Officer of Morris County. The subsequent appeal from that order was certified on our motion prior to argument in the Appellate Division.

Selection of a chief probation officer for Morris County became necessary because of the retirement of the incumbent. The position has been placed in the classified category of the Civil Service and the ultimate power of appointment

resides in the county judges or a majority of them. *N. J. S. A.* 2A:168–5; and see *Walsh v. Dept. of Civil Service,* 32 *N. J. Super.* 39 (*App. Div.* 1954), certification granted 17 *N. J.* 182 (1955). Exploration by the Chief Examiner and Secretary of the Department of Civil Service and his assistants of the possibility of promotional examination within the probation department, and consultation thereon with the appointing authority, led to the conclusion that such examination was impracticable because only one person in the department was eligible. See *N. J. S. A.* 11:10–7, 11:22–34. The judges then being desirous of having the names of three eligibles certified in accordance with *N. J. S. A.* 11:10–6, a competitive examination open to citizens of 12 months' residence in New Jersey was ordered. After conference with the Director of Examinations, the Chief Examiner and Secretary adopted and promulgated the qualifications for the post and fixed the date and place of the test. The qualifications stated are:

"1. Graduation from college preferably with specialization in the social sciences and related fields, supplemented by two years of full time graduate study in an approved school of social work. For applicants who do not offer the two years of graduate study, three years of full time work experience on the professional level in a welfare agency, specializing in children's or family problems, or case work in the correctional field may be accepted in lieu thereof.

2. Seven years of professional experience on a full time basis in probation, parole or related fields dealing with the rehabilitation of criminal offenders or juvenile or domestic relations work. Two years of this experience shall have been in a supervisory or administrative capacity."

The six plaintiffs are permanent probation officers of Morris County. One of them, Robert J. Myers, has been functioning as the acting chief probation officer. They attack the proposed examination on the grounds (1) that the Chief Examiner and Secretary of the Department of Civil Service has no authority to order an open competitive test rather than a promotional one, and (2) that the qualifications for admission to the test as promulgated by him are arbitrary and unreasonable.

 The Chief Examiner and Secretary is invested with broad general powers. He is appointed by the President of the Civil Service Commission with the approval of the Governor. *N. J. S. A.* 11:2–1. He is required to be "thoroughly familiar with the principles and methods of personnel administration generally recognized by those in charge of employment work for large public and private employers * * *." *N. J. S. A.* 11:2–3. He is empowered to "administer the work of the commission and perform such other duties as are conferred upon him by this Title, or by rule or regulation of the commission, under the direction and supervision of the president of the commission." *N. J. S. A.* 11:2–6. Under *N. J. S. A.* 11:6–2e authority is granted to him to "[t]est and pass, in the manner hereinafter provided, upon the qualification of applicants for appointment to or promotion in the State classified service, and establish employment * * * lists for the various classes; [and to] certify the names of persons eligible for employment, promotion or re-employment * * *." (It is not necessary to decide whether the position of chief probation officer is in the state or county service. See *Falcey v. Civil Service Commission*, 16 *N. J.* 117, 122 (1954).) And when he considers it essential in order to meet the needs of the service, he is directed to hold tests from time to time "for the purpose of establishing employment lists for the various positions in the classified service." *N. J. S. A.* 11:9–1. These tests:

"* * * shall be competitive, free, and except as to such limitations as to age, residence, health, habits, character, sex and *other qualifications as may be considered desirable by the chief examiner and secretary* and specified in the public announcement of the test, open to citizens who may be lawfully appointed to any position in the class for which they are held, who have resided in this state for at least twelve months prior to the date of the test." *N. J. S. A.* 11:9–2. (Emphasis added)

The examinations

"* * * may be written, oral, physical or in the form of a demonstration of skill, or any combination of these, and shall be

8

of such character as fairly to test and determine the qualifications, fitness and ability of the person tested actually to perform the duties of the class or position to which he seeks appointment. An investigation of education and experience and tests of intelligence, capacity, technical knowledge, mental skill or physical fitness or *other qualifications which in the opinion of the chief examiner and secretary serves to this end,* may be employed." *N. J. S. A.* 11:9–3. (Emphasis added)

And the Chief Examiner and Secretary "shall" reject the application of a person for admission to a test or refuse to test an applicant who:

"(a) Lacks the established qualification requirements for the position for which he applies * * *."

But "[a]n applicant or eligible may appeal to the commission from the action of the chief examiner and secretary in accordance with the rules established under this subtitle." *N. J. S. A.* 11:9–6. It may be noted that the Commission has adopted rules and regulations containing the substance of and implementing the various sections of the statute to which reference has been made. See Rules 2, 24, 32 (1949). Rule 26, which obviously was designed to effectuate the provision of *N. J. S. A.* 11:9–6 with respect to the appeal of a rejected applicant or eligible, falls short of accomplishing the legislative intent. By its terms a rejected applicant "may" be given an opportunity by the President of the Commission "to show cause why [his] application should not be rejected." A permissive review of that nature is unduly restrictive of the right bestowed. *Mangan v. Dept. of Civil Service,* 29 *N. J. Super.* 303, 307 (*App. Div.* 1954).

 Recitation of the various portions of the civil service legislation demonstrates the important role to be played in its administration by the Chief Examiner and Secretary. But appellants contend that he lacked authority to decide that the examination in this instance should be open and competitive rather than promotional. Reliance is placed on *N. J. S. A.* 11:10–7 and 11:22–34, which provide that vacancies in the higher classes of positions in the state service shall be filled "as far as it is consistent with the

best interests of the state" by competitive promotional tests (11:10–7) and in the same way in the county service "as far as it is consistent with the best interests of the service" (11:22–34) As has been indicated, the Chief Examiner and Secretary, after a survey of the probation department personnel and consultation with the county judges, concluded that only one person was qualified for a promotional test. Further conference with the judges revealed that they desired to withhold appointment until the names of three eligibles were certified under *N. J. S. A.* 11:10–6. *Timmins v. Civil Service Com'rs,* 276 *Mass.* 142, 177 *N. E.* 1, 75 *A. L. R.* 1232 (*Sup. Jud. Ct.* 1931); *Kaplan, The Law of Civil Service* 170 (1958). Compare *Falcey v. Civil Service Commission, supra.* As a result, the open competitive examination was decided upon by the Chief Examiner and Secretary, and in the absence of any proof to the contrary, it must be assumed that a promotional test was not either practicable or consistent with the public interest. In the field of civil service employment, administrative agents who are authorized to make decisions of this type are invested with a broad discretion and the courts will not interfere with their actions unless they are clearly arbitrary and unreasonable. *Falcey v. Civil Service Commission, supra,* 16 *N. J.* at *page* 123; *The Law of Civil Service, supra,* at *pp.* 153, 154. Inspection of the record discloses no adequate basis for a judicial declaration of mistaken use of discretion on this aspect of the case.

 It is urged, however, that failure of compliance with Rule 24 of the Commission invalidates the Chief Examiner and Secretary's ruling. The rule says, among other things, that "[w]henever tests are to be held to establish an employment list for any class the chief examiner and secretary, *with the approval of the president,* shall, after receiving such recommendations as the appointing authority may desire to make, determine as to whether promotion or original entrance tests or both shall be held." (Emphasis added) There was a vacancy in the office of President of the Civil Service Commission at the time of the event under discus-

sion, and so appellants insist that since the required approval could not be had, the Chief Examiner and Secretary's order for an open competitive test was beyond his authority. Aside from the question of whether Rule 24 is in conflict with the powers granted to him by the Legislature, which question is reserved (*cf. Zahn v. Dept. of Civil Service*, 8 *N. J.* 423, 427 (1952)), we cannot agree that non-existence of an incumbent president creates such administrative impotency. In a situation like the present one, particularly where only one member of the probation department met the qualifications for the higher class as fixed by the Chief Examiner and Secretary and agreed upon by the appointing authority, and where that authority insisted upon the statutory certification of three eligibles, and where the Commission on application of appellants reviewed and sustained the order, the Chief Examiner and Secretary's determination must be deemed to be within the spirit and scope of the statute.

The additional argument is made that the examination should have been limited to the permanent probation officers of Morris County or, if extended to non-residents of Morris County, should have been confined to applicants who are presently employed as probation officers. There is no doubt that the Legislature, in enacting the Civil Service Law favored promotion where practicable and consistent with the best interests of the State. However, this purpose is to be accomplished in the light of the other pertinent sections of the whole statute, among which are those conferring authority on the Chief Examiner and Secretary to adopt reasonable educational and experiential qualifications for promotion to the higher post or for admission to a competitive examination, whether limited to persons already in a lower grade in the particular department, or open to non-members of the department as well. Here again, the broad discretion of the legislative agent to promulgate such qualifications, and the impropriety of judicial intrusion with respect thereto in the absence of clear abuse, must be recognized. As is said in *The Law of Civil Service, supra*, at *p.* 127:

"So long as any such requirements are reasonable and are applied objectively to all candidates, there are few limitations on the discretion which may be exercised by the personnel agency in fixing the basis or conditions for taking the examination."

The same rule is applied whether the problem involved concerns original entry or promotional examinations. *Id.,* at *p.* 153.

 Much of the criticism is directed against the second of the requirements imposed by the Chief Examiner and Secretary. It calls for "[s]even years of professional experience on a full-time basis in probation, parole or related fields dealing with the rehabilitation of criminal offenders or juvenile or domestic relations work. Two years of this experience shall have been in a supervisory or administrative capacity." Specifically, the objection is to the failure to restrict the test to probation officers who have the experience demanded; inclusion of persons who acquired it in parole or related fields is said to be arbitrary. It must be noted, however, that the education and training desired and demanded is that which would be derived from work in the field of rehabilitation of criminal offenders or of juvenile or domestic relations. No proof whatever was offered at the Commission hearing to show that such experience could be gained only by persons functioning as probation officers, or that it was unrealistic and unreasonable to believe or to recognize that such training might be achieved in parole or related fields. The principal suggestion advanced by the witnesses for appellants was that the office of chief probation officer should be a career position and that a vacancy should be filled by examinations open only to probation officers (within the particular department or if necessary in other counties of the state) who met reasonable educational and experiential qualifications. There is no doubt that the ideal sought by the Legislature is promotion from lower to higher grade within the particular department involved. But, as has been indicated, although stern fidelity is demanded in the pursuit of that goal, the duty is relaxed where impracticable or inconsistent with the public interest.

And determination of the ultimate question of promotional or open tests has been assigned in the first instance to the Chief Examiner and Secretary of the Civil Service Department. Here, the record does not contain any material of sufficient substance to warrant the formulation of a judgment that his decision was arbitrary either as to the open examination or as to the job requirements to be met as a condition precedent to admission to the examination. It is important to the efficient functioning of the public service employment program that "[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible. They may decide a particular question wrong—but it is their question. [They are] vested with a high discretion, and its abuse must appear very clearly before the courts will interfere." *Maxwell v. Civil Service Commission*, 169 *Cal.* 336, 146 *P.* 869 (*Sup. Ct.* 1915). If there is any fair argument in support of the course taken or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision is conclusively legislative, and will not be disturbed unless patently corrupt, arbitrary or illegal. Doubts held by the court as to the wisdom of the administrator's decision do not alter the case. *Chambers v. Civil Service Commission*, 129 *N. J. L.* 191 (*E. & A.* 1942) ; *Artaserse v. Dept. of Civil Service*, 37 *N. J. Super.* 98 (*App. Div.* 1955) ; *Amerio v. City and County of San Francisco*, 126 *Cal. App. 2d* 359, 271 *P. 2d* 996 (*D. Ct. App.* 1954) ; *Wirzberger v. Watson*, 305 *N. Y.* 507, 114 *N. E. 2d* 15 (*Ct. App.* 1953) ; *Marlin v. Conway*, 199 *Misc.* 451, 106 *N. Y. S. 2d* 341 (*Sup. Ct.* 1951). Under all the circumstances disclosed by the record, not the least of which is the concurrence of the Commission in the Chief Examiner and Secretary's order, plaintiffs' claim of illegality and abuse of discretion cannot be sustained.

█ John Enright argues as a personal charge of error that he is qualified and should be allowed to take the examination. But the testimony shows beyond cavil that (1) he lacked the two years of full-time graduate study or

in lieu thereof three years full-time professional experience; (2) he was considerably short of the required seven years of professional experience on a full-time basis in probation, parole or related fields, and (3) he did not spend two of the necessary seven years in a "supervisory or administrative capacity." We find no justification for the substitution of our judgment for that of the Chief Examiner and Secretary or the Commission in declining to accept his application.

### PROCEDURAL ASPECTS OF CASE.

Subsequent to the decision of the Chief Examiner and Secretary to hold an open competitive test and the promulgation of the job requirements, appellants requested a hearing as to the propriety of the action. The request was granted by the Commission and two of its five members, *N. J. S. A.* 11:1–1, were delegated to sit. At the opening of the hearing a demand was made that the matter be heard by not less than a quorum of the Commission. The overruling of that demand is presented as a ground for reversal.

The status of the individual appellants at the time of the hearing must be noted. Mrs. Flanagan had been admitted to the examination; John Enright had been rejected as not possessing the required qualifications; the other four, Myers, Richard Enright, Morrison and Margaret Camisa, had not applied for leave to take the test. The doubt expressed by the Attorney General as to the standing of Mrs. Flanagan and the four non-applicants to appeal was put aside until this point in order to reach a determination on the full merits of the controversy.

 *N. J. S. A.* 11:5–1 ordains that "the commission, in addition to the other duties imposed upon it by law, shall, *as a body*:

\* \* \* \* \* \* \*

"(d) Hear appeals, *either as a body or through one or more members designated by a majority thereof to hear such appeals*, of persons in the classified service sought to be removed, \* \* \* or otherwise discriminated against contrary to the provisions of this subtitle, and render decisions thereon \* \* \*." (Emphasis added)

In our opinion, this section ought to be liberally construed so as to provide an effective administrative remedy for persons in the classified service who are discriminated against contrary to the Civil Service Act by the Chief Examiner and Secretary of the Department or by any other agency of the state or county government. No necessity appears at this time to define the nature of the discrimination which will justify appeal as a matter of right; nor is it imperative now to specify the situations which call for trial type or legislative type hearings. See, *Falcey v. Civil Service Commission, supra,* 16 *N. J.* at *page* 125; *De Stefano v. Civil Service Commission,* 130 *N. J. L.* 267, 269 *(E. & A.* 1943); *The Law of Civil Service, supra,* at *page* 196. In the present case, John Enright was entitled to appeal under *N. J. S. A.* 11:9–6 and in company with the other plaintiffs he was given a full and adequate hearing on all matters they undertook to raise. His appeal is cognizable under subsection (d) of *N. J. S. A.* 11:5–1 and was properly heard by two members of the Commission. *Cf. Civil Service Commission v. Rife,* 128 *N. J. L.* 503 *(Sup. Ct.* 1942).

Plaintiffs maintain that their appeal was under subsection (e) of the statute and therefore was required to be heard by at least a quorum of the Commission. However, subsection (e) applies only to such appeals "as *may* be referred" to the Commission by the Chief Examiner and Secretary, including appeals from the rejection of applicants for admission to examination. The obvious purpose of the Legislature is to confer on the Chief Examiner and Secretary, as the agent most actively concerned with the day to day administration of the policy of the act, discretionary authority to send selected matters to the Commission for review. It is only when such course is taken that the legislative mandate necessitates hearing by the Commission as a body. The record fails to reveal any such reference here. In this connection perhaps it is well to observe that failure of the Chief Examiner and Secretary to send an appeal to the Commission does not deprive an aggrieved

person of all remedy. If his case is not one cognizable under subsection (d), review may be sought in the Appellate Division of the Superior Court under *R. R.* 4:88–8.

All other allegations of error have been considered and found to be without legal merit. Accordingly, the order of the Department of Civil Service is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.