IRVING HEIR, INDIVIDUALLY AND ON BEHALF OF A CLASS CONSISTING OF ALL LICENSED WHOLESALE SOLICITORS OF ALCOHOLIC BEVERAGES OF THE STATE OF NEW JERSEY, WINE AND LIQUOR SALESMEN OF THE STATE OF NEW JERSEY, LOCAL 19, AND ALFRED M. D'AGOSTINI, INDIVIDUALLY, APPELLANTS, v. JOHN J. DEGNAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, JOSEPH H. LERNER, DIRECTOR, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, RESPONDENTS.

WINE & SPIRITS RETAILERS OF NEW JERSEY, INC., A NOT-FOR-PROFIT NEW JERSEY CORPORATION, THE PACKAGE SHOP, INC., A NEW JERSEY CORPORATION, JOCAR, INC., A NEW JERSEY CORPORATION, AND V. J. F. LIQUOR RETAILERS, INC., A NEW JERSEY CORPORATION, APPELLANTS, v. JOHN J. DEGNAN, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, JOSEPH H. LERNER, DIRECTOR, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, AND DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEPARTMENT OF LAW AND PUBLIC SAFETY, RESPONDENTS.

Argued December 10, 1979—Decided February 11, 1980.

110

111

*Martin F. Kronberg* argued the cause for appellants Heir, *et al.* (*Porzio* and *Bromberg* and *Martin F. Kronberg,* attorneys; *Myron J. Bromberg, Martin F. Kronberg* and *Carl Greenberg,* of counsel; *Martin F. Kronberg* and *Richard M. Chisholm,* on the briefs).

*Jonathan L. Goldstein* argued the cause for appellants Wine & Spirits Retailers of New Jersey, Inc., *et al.* (*Hellring, Lindeman, Goldstein* and *Siegel,* attorneys; *Jonathan L. Goldstein,* of counsel; *Charles Oransky,* on the briefs).

*John J. Degnan* argued the cause for respondents (*John J. Degnan*, Attorney General of New Jersey, attorney; *Stephen Skillman*, Assistant Attorney General, and *Dennis P. O'Keefe*, Deputy Attorney General, of counsel; *Mart Vaarsi*, Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

SULLIVAN, J.

These appeals are before this Court on direct certification granted while the matters were pending unheard in the Appellate Division. Involved is the validity of regulations adopted by the Director of the Division of Alcoholic Beverage Control (ABC). These regulations eliminate retail price maintenance in the alcoholic beverage industry except for sales below cost and otherwise modify significantly the previous policy of the ABC regarding price controls and competition.

Two appeals have been filed from the adoption of the new regulations, one on behalf of liquor retailers, and the other on behalf of wholesale solicitors. Both appeals challenge the power of the Director to make these changes in the absence of specific legislative authorization. Furthermore, it is alleged that the procedures utilized in adopting the new regulations violated due process. Finally, specific attack is made on six of the regulations that (1) authorize quantity discounts, (2) regulate credit practices, (3) require purchases from New Jersey wholesalers, (4) ban cooperative advertising, (5) prohibit sales below cost and (6) provide emergency measures for the collection of sales tax. Our conclusion is that elimination of retail price maintenance and allowance of price competition, the basic thrust of the new regulations, is well within the powers granted to the Director by the Legislature. We find that the procedures employed in the adoption of the regulations satisfy due process and that the challenges to specific regulations are without merit except as to the regulations prohibiting cooperative advertising and providing emergency measures for the collection of sales tax.

It is undisputed that the liquor industry is affected with a public interest. Consequently, it has been subject to intense State regulation and control for the purpose of curbing relationships and competitive practices which improperly stimulate sales and thereby impair the State's policy favoring trade stability and the promotion of temperance. A succinct outline of the history of State regulation of the sale of liquor is given by Justice Jacobs in *Grand Union Co. v. Sills*, 43 *N.J.* 390, 398–402 (1964).

The present system of control in this State commenced in 1933 following repeal of national prohibition. *L.*1933, *c.* 436. However, it was not until 1938 that price maintenance was established through the use of fair trade contracts. *N.J.S.A.* 33:1–23.1. Regulation 30 adopted at that time provided for manufacturers and wholesalers to file fair trade contracts and price lists with the ABC which published the information and generally enforced the price lists against all retailers, whether signers or non-signers. See *Gaine v. Burnett*, 122 *N.J.L.* 39, 41 (Sup.Ct.), aff'd, 123 *N.J.L.* 317 (E. & A. 1939).

This method of retail price regulation was changed as a result of a decision by the United States Supreme Court in *Schwegmann v. Calvert Distillers Corp.*, 341 *U.S.* 384, 71 *S.Ct.* 745, 95 *L.Ed.* 1035 (1951). In *Schwegmann* the Supreme Court held that non-signers of a fair trade contract could not be held to its terms and that a law so providing was invalid. Accordingly, in 1951 the director, by regulation changed the method of retail price control from fair trade contract [1] to a price posting system which survives without significant change to this day. *N.J.S.A.* 33:1–93; see *N.J.A.C.* 13:2–1.

---

[1] *N.J.S.A.* 33:1–23.1 enacted in 1938 is still part of the Alcoholic Beverage Law but is a nullity, since, by *L.*1975, *c.* 107, the Legislature repealed sections 56:4–3 to 4–6 of the New Jersey Fair Trade Law, *N.J.S.A.* 56:4–1 *et seq.*, which provided for fair trade contracts.

The price regulation system, still in effect by virtue of a stay of the new regulations granted by this Court, is as follows. Every manufacturer of wine or distilled spirits who sells to a New Jersey wholesaler must file a price schedule with the ABC on a quarterly basis for such products offered to wholesalers. *N.J.A.C.* 13:2–36.1 to –36.2. Once filed, the prices are binding for that period on both manufacturers and wholesalers. *N.J. A.C.* 13:2–36.1. Also, every manufacturer must "affirm" that its prices for distilled products in New Jersey are at the lowest price at which such products are being sold anywhere in the United States. *N.J.A.C.* 13:2–36.2(c). Manufacturers also file with the ABC a quarterly schedule of "minimum consumer re-sale prices" for all package alcoholic beverages sold within the State. *N.J.A.C.* 13:2–33.1(a). This schedule is binding on all retailers who are prohibited from selling below the listed price. *N.J.A.C.* 13:2–33.5.

The regulations do not establish any standards or guidelines for the manufacturer when it fixes its wholesale and retail prices, except for the affirmation heretofore noted. *N.J.A.C.* 13:2–36.2(c). Thus, the manufacturer has almost absolute control of its prices to wholesalers in this State and is also free to set the minimum price at which its product is sold to the consumer. The ABC's function is only to oversee the filing and publication of the wholesale and retail price lists and to enforce adherence to them.

At the wholesale level, prices from wholesaler to retailer in this State are fixed by the wholesaler who must file quarterly price listings for all of its alcoholic beverages other than malt alcoholic beverages. *N.J.A.C.* 13:2–36.2(f). However, the regulations allow wholesalers to inspect price lists filed by other wholesalers and to raise or lower their own prices "to meet a higher or lower and competing price." *N.J.A.C.* 13:2–36.5. In practice these regulations have resulted in the functional equivalent of horizontal price fixing among wholesalers carrying the same brand products.

The present regulations also limit the extension of credit to a retailer by requiring the retailer to pay for delivered goods within one month after delivery. *N.J.A.C.* 13:2–39.1. If payment is not made within that time, the wholesaler must notify the ABC and the retailer is placed on a "default list." *N.J.A.C.* 13:2–39.3. Until removed from the list the retailer may purchase alcoholic beverages on a cash basis only. *N.J.A.C.* 13:2–39.4. A retailer who is on the list for 39 consecutive weeks is placed on the "non-delivery" list and may not purchase any alcoholic beverages. *N.J.A.C.* 13:2–39.3 to –39.4. Additional regulations severely restrict numerous sales activities by retailers and wholesalers. See *N.J.A.C.* 13:2–24.1 *et seq.* These regulations deal with equipment signs and other advertising material and their use for sales promotion. *N.J.A.C.* 13:2–24.1 *et seq.* In essence, the regulations use a price regulation anticompetitive approach in the interest of trade stability and temperance.

In 1976 the Attorney General began an investigation into persistent reports of widespread disregard and abuse of the ABC regulations, and illegal trade practices at every level of the alcoholic beverage industry. He sought to determine whether or not the reports were true and, if so, whether the present regulations were a contributing factor. The investigation disclosed the existence of widespread abuses and resulted in administrative charges being filed against numerous wholesale licensees.

Also, in August 1977, the Attorney General established a "Task Force" to determine whether existing regulations should be modified to improve control over the trade practices of the alcoholic beverage industry. In January 1979 the Task Force released its findings in a comprehensive report. The report found illicit trade practices not only among wholesale licensees, but at all levels of the industry, and identified present ABC regulations as a contributing factor. Major changes in these regulations in the area of industry marketing and pricing practices were recommended, the most salient of which were the

elimination of retail price maintenance and the existing method of wholesale price posting. Changes in the regulation of credit and greater latitude in marketing and promotional activities were also recommended.

On the basis of his investigation and the Task Force Report, the Attorney General submitted a "Statement of Policy Concerning Price Deregulation of the Alcoholic Beverage Industry" to the Governor. The statement seriously questioned the legality of the retail price maintenance system in New Jersey in the light of recent court decisions that similar kinds of retail price maintenance, in which the state played no role in setting the retail prices, were invalid under the Sherman Antitrust Act. See *Rice v. Alcoholic Bev. Control Appeals Bd.*, 21 *Cal.*3d 431, 146 *Cal.Rptr.* 585, 579 *P.*2d 476 (1978).[2] However, the Attorney General found it unnecessary to decide the question of the legality of New Jersey's retail price maintenance system since he concluded that from a public policy standpoint it was in the public interest to abandon retail price maintenance. This, he stated, could be accomplished by a revision of the ABC regulations. See Annotation, "Validity of state statute or regulation fixing minimum prices at which alcoholic beverages may be sold at retail," 96 *A.L.R.*3d 639 (1979).

Public informational hearings were held on February 8 and 9, 1979 on the subject of price deregulation. Numerous expert witnesses testified on the issue and its impact on the industry. The Task Force Report and its findings and recommendations were discussed extensively.

Following the hearings, proposed amendments and supplements to the ABC regulations were drafted and notice of intention to adopt the same was duly published pursuant to

---

[2]See also *California Retail Liquor Dealers Ass'n. v. Midcal Aluminum, Inc.*, 90 *Cal.App.*3d 979, 153 *Cal.Rptr.* 757 (Ct.App.1979), *cert.* granted, 444 *U.S.* 1010, 100 *S.Ct.* 657, 62 *L.Ed.*2d 31 (1979), involving wine retail price maintenance statutes.

section 4 of the Administrative Procedure Act, *N.J.S.A.* 52:14B–4. In response, additional comments were received from the liquor industry and the public and were reviewed by the Director.

On April 4, 1979 the proposed amendments and supplements were adopted and filed. The new regulations substantially modify the anti-competition policy which had previously existed. Retail price fixing has been eliminated except for a prohibition against sales below cost. *N.J.A.C.* 13:2–24.8 (amended). The system of wholesale price posting has been changed to permit price competition among wholesalers by eliminating the prior practice of allowing wholesalers to examine other wholesalers' price lists and raise or lower their posted prices to meet a higher or lower and competing price. *N.J.A.C.* 13:24–6(c)(3) (amended). Other amended regulations deal with quantity discounts and credit practices, require purchases from New Jersey wholesalers, ban cooperative advertising, prohibit sales below cost and provide emergency measures for the collection of sales tax.

### A.

Preliminarily, appellants argue that they have not been afforded a "meaningful opportunity" to be heard concerning the revised regulations as required by the New Jersey Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.*, and the Due Process Clause, particularly with respect to the denial of their request for a hearing on the proposed regulations.

This argument lacks merit. The Task Force Report was the subject of two well attended public hearings. The changes in regulatory approach recommended by the report were discussed extensively and considerable expert testimony for and against these changes was received. Some of the present appellants participated actively in these hearings. Thereafter, proposed

amendments and supplements to the ABC regulations were drafted and, in accordance with the requirements of the Administrative Procedure Act, *N.J.S.A.* 52:14B–4, notice of intention to adopt the same duly published. In response, further comments were received from the liquor industry and the public and were reviewed by the Director prior to final adoption.

An administrative agency is not obligated to hold a hearing on proposed regulations before adopting them. The Administrative Procedure Act does provide for timely opportunity to submit data and argument (here provided), but does not require a formal public evidentiary hearing as part of the rule-making process. *Motyka v. McCorkle*, 58 *N.J.* 165, 180–181 (1971). Nor are findings of fact, sufficient to justify the regulations, a required part of the same process. *Consolidation Coal Co. v. Kandle*, 105 *N.J.Super.* 104, 115–118 (App.Div.), aff'd o. b., 54 *N.J.* 11 (1969). We conclude that the Director in amending and supplementing the regulations here under review substantially complied with the provisions of the Administrative Procedure Act and the requirements of due process.

### B.

The basic contention of appellants is that the system of price maintenance set forth in the present regulations contributes to the stability of the liquor industry, promotes temperance and is an integral part of the public policy of this State. They say, therefore, that the present system of price maintenance can be changed only by legislative action or authorization and not through unilateral action of the Director. *Duff v. Trenton Beverage Co.*, 4 *N.J.* 595, 608 (1950), is cited for the proposition that price regulation is essentially a legislative function. Appellants remind us of our observation in *Grand Union Co. v. Sills, supra*, that

* * * our State has fared well in its administration of the highly volatile liquor field. Any suggestion that there be a change of course in favor of freer

competitive practices * * * would be entirely a matter for the New Jersey Legislature. [43 *N.J.* at 403].

This observation, it must be noted, was made in connection with our ruling that a State statute limiting retail liquor licenses to two per person was constitutional and in response to the plaintiffs' argument that freer competitive practices such as the multiple holding of retail licenses would serve the public interest. In *Grand Union* we declined to strike down the legislation in the absence of a showing that it lacked a rational basis. *Id.* at 397.

Appellants' contentions that the new regulations impair the long-standing public policy of maintaining stability in the liquor industry and promoting temperance are lacking in merit. On the contrary, the record before us, including the Task Force Report, demonstrates that these worthwhile goals will be promoted by the new regulations.

We have no statute in this State calling for alcoholic beverage retail price control except for *N.J.S.A.* 33:1–23.1,[3] the outmoded fair trade contract provision. Although the Alcoholic Beverage Control Act (the act) was adopted in 1933, *L.*1933, *c.* 436, it was not until 1938 that the Director, by regulation 30, first structured a system of retail price maintenance. *Gaine v. Burnett, supra,* 122 *N.J.L.* at 41. While this regulation stemmed from the 1938 statutory enactment authorizing the Director to enforce fair trade contracts in the liquor field, it was held in *Gaine* that the regulation was an exercise of the Commissioner's (Director's) inherent power and that the 1938 enactment was unnecessary to confer power to enact regulation 30. *Id.* at 42.

■ The act has delegated to the Director the authority to make such rules and regulations as may be necessary for the proper regulation and control of the manufacture, sale and

---

[3]*N.J.S.A.* 33:1–39.2 refers to maintenance of prices at which malt alcoholic beverages may be sold.

distribution of alcoholic beverages. *N.J.S.A.* 33:1–39. Of course, regulations to be valid must be "within the ambit of delegated authority." *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561–562 (1978). While *N.J.S.A.* 33:1–39 does not specifically empower the Director to establish a system of price maintenance, *Gaine v. Burnett, supra,* as above noted, held that adoption of a retail price fixing regulation was within the inherent power of the Director.

*Gaine* also held that leaving price control to the discretion of the Director was not an unconstitutional delegation of authority, as the legislative policy expressed in the act was clear and provided a definite enough rule of action. 122 *N.J.L.* at 43–44. The real issue is whether the Director, once having established a system of retail price maintenance by regulation, has the power to substantially modify it. Appellants say that he may not because it will result in an increase in liquor consumption and force marginal retailers out of business, thereby subverting the established public policy of temperance and industry stability. It is also argued that changing of the regulatory approach from anti-competitive to pro-competitive is such a drastic change of policy that it can be accomplished only by legislative action.

These contentions are similarly lacking in substance. Assuming that price regulation is essentially a legislative function as stated in *Duff v. Trenton Beverage Co., supra,* 4 *N.J.* at 608, the act has delegated that function to the Director and has provided him with a definite enough rule of action. *Gaine v. Burnett, supra* 122 *N.J.L.* at 43–44. Appellants concede that the Director had the power to establish price control by regulation, but strain to deny him the power to modify or change regulations once adopted, even though the act specifically provides that he may alter, amend, or repeal the same. *N.J.S.A.* 33:1–39.

One advantage of administrative regulations is their flexibility and ability to keep pace with current needs. Here they enable the Director to respond expeditiously once the need for

change is demonstrated. He has determined that the old regulatory approach of anti-competition and rigid price regulation should be substantially modified if he is to carry out the broad purposes of the act and serve the public interest.

This decision has not been shown to be arbitrary, capricious or unreasonable. *United Hunters Assn. of N. J. v. Adams*, 36 *N.J.* 288, 292 (1962). As noted, appellants say it will lead to increased consumption and frustrate the policy of temperance. However, under present regulations much liquor is available at low prices, and it has not been shown that removing retail price controls will open up a substantially larger consumer market, even though the Task Force Report concludes that the elimination of retail price maintenance will result in a considerable reduction in liquor prices. Deference must be given to the Director's expertise in this field and regulations duly adopted by him are to be accorded a presumption of validity. *New Jersey Guild of Hearing Aid Dispensers v. Long, supra*, 75 *N.J.* at 560–562. That presumption is overcome only when it is shown that the regulation is clearly arbitrary and unreasonable and has no rational relationship to the purpose intended. *Consolidated Coal Co. v. Kandle, supra*, 105 *N.J.Super.* at 117. Appellants have not made such a showing. The most that appears is that appellants and their experts disagree with the studies, analyses, conclusions and recommendations made by and on behalf of the Attorney General and the Director. *Flanagan v. Civil Service Department*, 29 *N.J.* 1, 12 (1959).

## C.

We consider next the particular challenges to the validity of specific regulations adopted on April 4, 1979.

*N.J.A.C.* 13:2–24.1 (amended) generally prohibits discrimination in terms of sale of alcoholic beverages. However, paragraph (b) of that regulation allows

(1) differentials which make only due allowance for actual differentials in the cost of manufacture, sale, or delivery resulting from differing methods or

quantities in which alcoholic beverage products are sold or delivered to, or paid for by, purchasers including discounts for prompt payment;

(2) differences in terms of credit, when justified by history or risk  *  *  *.

Appellants argue that these exceptions effectively swallow up the provision against discrimination. They also contend that the permitted price differentials are contrary to *N.J.S.A.* 33:1–89, which provides that it is unlawful for a person selling to retailers

*  *  * to discriminate in price, directly or indirectly, between different retailers purchasing alcoholic beverages other than malt beverages bearing the same brand or trade name and of like age and quality.

Furthermore, appellants contend that even if the exceptions are lawful, they favor retailers who purchase liquor in large quantities, thereby discriminating against the small store operator.

██  We find no statutory prohibition against the new exceptions allowing discounts. *N.J.S.A.* 33:1–89 must be read in conjunction with *N.J.S.A.* 33:1–90 which prohibits wholesalers from denying any retailer a discount available to another retailer purchasing goods "of like age, quality and quantity." Taken together, these sections support the Director's position that the act does not classify quantity discounts as discriminatory and prohibit them. Such discounts are not allowed under *N.J.A.C.* 13:2–36.10, but that regulation is now being repealed. The new exceptions simply incorporate the generally accepted business practice whereby sellers give discounts to purchasers when justified by actual differences in costs to the seller in providing goods to a particular buyer. Contrary to appellants' argument, small retailers are not prejudiced by the allowance of quantity discounts as they are allowed to purchase on a cooperative basis and thus avail themselves of the discount. *N.J.A.C.* 13:2–26.1 (amended). The discount need not be given if multiple deliveries are called for under the cooperative purchase since the

savings in costs to the seller—the basis for a discount—does not arise. We conclude that *N.J.A.C.* 13:2–24.1 (amended) is a proper exercise of administrative authority.

A further challenge is made to the credit provision of *N.J.A.C.* 13:2–24.4 (amended) which provides that if a retailer becomes delinquent in credit, the wholesaler or distributor may notify other wholesalers and distributors who sell like or similar alcoholic beverages. Thereafter, those notified may not sell or offer to sell like or similar alcoholic beverages to the delinquent retailer. Appellants charge that this enables wholesalers and distributors to blackmail retailers.

Other provisions of the new regulations which prohibit sales below cost, *N.J.A.C.* 13:2–24.8 (amended), and require payment upon delivery of cooperative purchases, *N.J.A.C.* 13:2–26.1(6) (amended), are challenged as discriminatory, illegal, void and contrary to the public policy of this State. The retailer appellants contend that they should be allowed to sell below cost to meet the competition of large retailers. The wholesaler appellants argue that by allowing sales at cost but not below, the regulation will inspire competition among retailers to sell at the lowest possible price in violation of the avowed public policy against predatory pricings. The requirement of payment upon delivery of cooperative purchases is attacked as weakening the purchasing power of the cooperatives.

These contentions are without substance. The act specifically authorizes the Director to promulgate regulations respecting sales on credit. *N.J.S.A.* 33:1–39. Prior credit regulations have been expressly sustained by this Court. *F. & A. Distrib. Co. v. Div. of Alcoh. Bev. Contr.*, 36 *N.J.* 34, 36 (1961). The new regulations are designed to prevent discriminatory extensions of credit and predatory price cutting and the unwholesome results therefrom. However, ABC participation is minimized and the burden of maintaining and exchanging credit information and

obedience to credit restrictions is placed upon the wholesaler or distributor. No bases for invalidation have been shown.

■ Appellants' attack on *N.J.A.C.* 13:2–25.1 (amended) is frivolous. This regulation requires wholesalers and distributors to deliver alcoholic beverages to retailers from inventory stored in a New Jersey warehouse for at least 24 hours. The regulation is similar to the one presently in force and is bottomed on *N.J.S.A.* 33:1–11, which requires every plenary wholesale licensee and wine wholesaler licensee to make delivery of alcoholic beverages and wines sold to retailers from inventory in a warehouse located in New Jersey. The constitutionality of this statute was sustained in *Kasser Distillers Products Corp. v. Sills*, 85 *N.J.Super.* 351 (Ch.Div.1964). The regulation implements the statute and serves the valid purpose of preventing the diversion of alcoholic beverages and assuring the proper collection of taxes under the Alcoholic Beverage Tax Law, *N.J.S.A.* 54:43–1. The argument that both the new and the old regulations are anti-competitive and therefore invalid fails to consider the purpose of the statute and regulations, *supra*, and the benefit to the State resulting therefrom.

■ *N.J.A.C.* 13:2–24.11(a)(8) (amended) prohibits joint advertising by competing independently owned retailers (cooperative advertising). Appellant retailers argue that this regulation discriminates against small retailers in their efforts to compete with large retailers and also implicates First Amendment rights by infringing on free speech. The regulation, however, does not prohibit a retailer from advertising. It is aimed at cooperative advertising by competing retailers. At least where price advertising is involved, such cooperative advertising would undoubtedly involve horizontal price fixing, a *per se* violation of Federal and State antitrust laws. See 15 *U.S.C.* § 1 *et seq.; N.J.S.A.* 56:9–1 *et seq.; United States v. Socony-Vacuum Oil Co.*, 310 *U.S.* 150, 60 *S.Ct.* 811, 84 *L.Ed.* 1129 (1940). On this basis the regulation is aimed at preventing illegal marketing practices and is a reasonable exercise of the Director's power. However,

cooperative advertising which does not involve prices does not come under the rationale for the regulation. No other reason is advanced in support of the regulation and under these circumstances such a restriction runs afoul of the First Amendment's prohibition against unwarranted governmental interference with "commercial speech." See *Freidman v. Rogers*, 440 *U.S.* 1, 99 *S.Ct.* 887, 59 *L.Ed.2d* 100 (1979); *Bates v. State Bar of Arizona*, 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.2d* 810 (1977); *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 *U.S.* 748, 96 *S.Ct.* 1817, 48 *L.Ed.2d* 346 (1976). We therefore hold *N.J.A.C.* 13:2–24.11(a)(8) (amended) to be invalid insofar as it proscribes cooperative advertising of matters other than prices.

■ Finally, we consider the validity of *N.J.A.C.* 13:2–41.5 (amended), which establishes an interim method of collecting the sales tax on sales of alcoholic beverages. This regulation continues the last filed Minimum Consumer Resale Price List for tax computation purposes, even though such lists have been eliminated under the new regulations.

When the Sales and Use Tax Act was passed in 1966, *L.*1966, *c.* 30, the tax on receipts from retail sales of alcoholic beverages was collected by the retailer at the time of sale and remitted to the State. This system created problems of enforcement because of the 12,000 licensed retailers in the State. Accordingly, in 1972 the Sales and Use Tax Act was amended and the term "retail sales" redefined, in the case of alcoholic beverages, to include a sale by the wholesaler to a retailer. *N.J.S.A.* 54:32B–2(e)(2)(B). At the same time section 2(d) of the same act was amended to provide:

> For the purposes of this act, receipts from the sale of alcoholic beverages * * shall be deemed to be the minimum consumer retail price as filed with the New Jersey Division of Alcoholic Beverage Control * * *.

Under the 1972 amendments, therefore, the wholesaler collects the tax from the retailer at the time of the sale to the retailer

and remits it on a monthly basis to the Division of Taxation. Computation of the tax is made by the wholesaler by using the current minimum consumer resale prices on file with the ABC as the "receipts from the sales of alcoholic beverages" upon which the sales tax is imposed. *N.J.S.A.* 54:32B–2(d).

The amended regulations have eliminated these retail price lists so that the provisions in the Sales and Use Tax Act for the computation of the tax on sales of alcoholic beverages are no longer pertinent. To meet this problem the Director adopted *N.J.A.C.* 13:2–41.5 (amended) which provides for the emergency collection of the sales and use tax on receipts from the sale of alcoholic beverages by continuing the last Minimum Consumer Resale Price List in effect solely for the purpose of determining the resale price for the collection of the sales and use tax pursuant to *N.J.S.A.* 54:32B–2(d).

Appellants have attacked this transitional provision as being violative of equal protection and substantive due process, and as an usurpation of legislative power. We conclude that the regulation goes beyond the limits of the Director's regulatory power. His concern that the computation and collection of the sales and use tax on the sale of alcoholic beverages should not be impaired is understandable. However, the regulation substantially changes the application of *N.J.S.A.* 54:32B–2(d) and establishes a new basis for computation of the tax where alcoholic beverages are concerned. This can be done only by the Legislature. Nevertheless, sales of alcoholic beverages are still subject to the tax which should be collected and paid to the Division of Taxation. Therefore, we will allow *N.J.A.C.* 13:2–41.5 (amended) to remain in effect for six months commencing with the date of this opinion, (1) to preserve the continuity of sales tax collection on the sale of alcoholic beverages and (2) to enable the Legislature to take appropriate action.

The change in administrative approach as reflected in the new regulations is not immutable. Should experience demonstrate

the need for further change, modification or even repeal, the Director would have the statutory obligation to take prompt action to see to it that the promotion of temperance and industry stability, the basic purposes of the ABC act, will be maintained.

The action of the Director in adopting these amendments is affirmed, other than the ban on non-price cooperative advertising, and subject to the six-months limitation on *N.J.A.C.* 13:2–41.5 (amended). The stay heretofore entered is vacated.

*For modification and affirmance* —Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—5.

*For reversal* —none.