NEW JERSEY RETAIL LIQUOR STORES ASSOCIATION, PLAINTIFF-APPELLANT, v. JOHN J. DEGNAN, ATTORNEY GENERAL OF NEW JERSEY, JOSEPH H. LERNER, DIRECTOR, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL AND DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, DEFENDANTS-RESPONDENTS, AND OVERPECK LIQUORS, INC., INTERVENOR-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 14, 1981—Decided June 4, 1981.

476

Before Judges BOTTER and KING.

*Michael J. Herbert* argued the cause for appellant (*Sterns, Herbert & Weinroth,* attorneys).

*Kenneth I. Nowak,* Deputy Attorney General, argued the cause for respondents (*John J. Degnan,* former Attorney General of New Jersey and *James R. Zazzali,* Attorney General of New Jersey, attorneys; *Stephen Skillman,* Assistant Attorney General, of counsel).

*David S. Piltzer* argued the cause for intervener-respondent (*Piltzer & Piltzer,* attorneys).

The opinion of the court was delivered by

KING, J. A. D.

This action, brought by a trade association of about 800 independently-owned retail liquor dealers, attacks the validity of a regulation of the Division of Alcoholic Beverage Control of the Department of Law and Public Safety which allows cooperative retail price advertising. Overpeck Liquors, Inc., was permitted to intervene in support of the regulation.

The regulation, effective July 3, 1980, states in the pertinent part in controversy:

. . . . . . . .

(a) No manufacturer, importer, registrant, wholesaler, distributor or retailer shall include in any advertising material or in any advertisement, directly or indirectly, any statement, illustration, design, device, name, symbol, sign or representation that:

.    .    .    .    .    .    .    .

(7) offers alcoholic beverage pricing information in affiliation with other nonidentically owned licensees in a communication which fails to truthfully disclose and prominently indicate (a) the identity of the individual licensee who established the pricing information, and (b) that the specific prices and products featured may not be available at all businesses represented or indicated as being affiliated. [*N.J.A.C.* 13:2–24.10(a)(7)]

By way of background, on April 4, 1979 the ABC promulgated sweeping new regulations for the liquor industry, to become effective on May 1, 1979. 11 *N.J.R.* 257(c). These new rules replaced a four-decade-old retail price maintenance system. They are commonly called "deregulation" rules. Retail price competition was the new order, replacing the price maintenance system. But sales below wholesale costs, discriminatory credit practices, and tie-in sales were prohibited.

The "deregulation" rules permitted retail licensees to join in cooperative efforts for the purchase and cartage of alcoholic beverages. *N.J.A.C.* 13:2–26.1. According to the ABC, this would improve the small retailers competitive position in relation to chain store operations. The original 1979 regulations prohibited retail licensees who were not identically owned from joining in any cooperative advertising. *N.J.A.C.* 13:2–24.11(a)(8) (amended 12 *N.J.R.* 345). These "deregulation" rules were challenged by various individuals and representatives of retail and wholesale liquor interests and were in most part upheld by our Supreme Court in *Heir v. Degnan*, 82 *N.J.* 109 (1980). The only regulation invalidated pertinent to this discussion was *N.J.A.C.* 13:2–24.11(a)(8), which prohibited joint advertising by competing, independently-owned retailers. In respect of such joint advertising the Supreme Court said:

*N.J.A.C.* 13:2–24.11(a)(8) (amended) prohibits joint advertising by competing independently owned retailers (cooperative advertising). Appellant retailers argue that this regulation discriminates against small retailers in their efforts to compete with large retailers and also implicates First Amendment rights by

infringing on free speech. The regulation, however, does not prohibit a retailer from advertising. It is aimed at cooperative advertising by competing retailers. At least where price advertising is involved, such cooperative advertising would undoubtedly involve horizontal price fixing, a *per se* violation of Federal and State antitrust laws. *See* 15 *U.S.C.* § 1 *et seq.*; *N.J.S.A.* 56:9–1, *et seq.*, *United States v. Socony-Vacuum Oil Co.*, 310 *U.S.* 150, 60 *S.Ct.* 811, 84 *L.Ed.* 1129 (1940). On this basis the regulation is aimed at preventing illegal marketing practices and is a reasonable exercise of the Director's power. However, cooperative advertising which does not involve prices does not come under the rationale for the regulation. No other reason is advanced in support of the regulation and under these circumstances such a restriction runs afoul of the First Amendment's prohibition against unwarranted governmental interference with "commercial speech." *See Freidman v. Rogers*, 440 *U.S.* 1, 99 *S.Ct.* 887, 59 *L.Ed.2d* 100 (1979); *Bates v. State Bar of Arizona*, 433 *U.S.* 350, 97 *S.Ct.* 2691, 53 *L.Ed.2d* 810 (1977); *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 *U.S.* 748, 96 *S.Ct.* 1817, 48 *L.Ed.2d* 346 (1976). We therefore hold *N.J.A.C.* 13:2–24.11(a)(8) (amended) to be invalid insofar as it proscribes cooperative advertising of matters other than prices. [at 125–126]

Appellant Association here contends that the Supreme Court's statement that "cooperative price advertising would undoubtedly involve horizontal price fixing" in violation of federal and state antitrust laws is dispositive of the invalidity of the questioned regulation, *N.J.A.C.* 13:2–24.10(7).

Following the decision in *Heir v. Degnan, supra,* and as part of its ongoing experience in deregulation of pricing, the ABC held a public informational hearing on April 22, 1980. Suggestions for amendments to pricing regulations, including the regulation precluding retail cooperative advertising, were solicited. Predictably, representatives of retail cooperatives contended for the right to joint price advertisement; unassociated and independent retailers urged a ban on cooperative price advertising. The questioned regulation was thereafter adopted on July 3, 1980, 12 *N.J.R.* 494(b). On July 10 this appeal was filed. Applications for stay of enforcement of the regulation were denied by this court and by the Supreme Court. As a result of this reversal of form and the adoption of § 24.10(a)(7), the ABC now allows cooperative price advertising as long as the identity of the licensee who established the pricing information and the fact that the specific prices and products featured in the ad may

not be available at all represented affiliates is truthfully and prominently disclosed in the ad.[1]

Our task today is not to measure the wisdom of the regulatory practices of this specialized agency but to determine its legality. Conflicts on the merits of economic regulation "rarely lend themselves to judicial determination." *Wickard v. Filburn,* 317 *U.S.* 111, 129, 63 *S.Ct.* 82, 91, 87 *L.Ed.* 122 (1942) (federal regulation of wheat production under Commerce Clause). "And with the wisdom, workability or fairness of the plan or regulation we have nothing to do." *Ibid.* The Association contends that the questioned regulation has permitted members of the State's two major retail cooperatives, which already benefit from substantial discount-purchasing leverage, to engage in predatory minimum retail price-fixing which will eventually be disastrous to the Association's unaffiliated and independent retailers. The problem, as presented by the Association, is not that possible price-fixing, encouraged and condoned by the regulation, restricts competition but that it fosters unwholesome price competition to its membership's detriment. The Association contends that due to volume discounting, cooperative members can sell at retail at the same price or less than some of its membership must pay to buy at wholesale.

On behalf of the regulation the Attorney General contends that it is a justifiable product of the extensive changes which have taken place in the liquor industry since the 1979 "deregula-

---

[1] A typical disclaimer appearing in ads furnished by the parties to this appeal says:

> BPS is a network of independently owned and operated stores. Under New Jersey Law effective July 7, 1980, 13:2–24 10 Sub. 7, prices listed in this ad available only at Colonial Village Liquors, a BPS member. Other BPS retailers may vary in price as per the above mentioned regulation. All prices cash & carry. No other discounts allowed on advertised items. Quantities limited. Not responsible for typographs or errors. In the event of typographical error, lowest price as provided by N. J. state law will prevail. Prices effective July 9 thru July 19, 1980.
> A typical Buy Rite ad listed 45 stores in 12 counties.

tion" rules were adopted. He suggests that the Association's real complaint is against effective price competition, not price-fixing. The challenge to § 24.10(a)(7), says the Attorney General, "reflects an effort to have the court's rearrange the marketplace in a manner more to the liking of appellant's member stores." The Attorney General stresses that the regulation differs substantially from horizontal price-fixing condemned in *Heir v. Degnan, supra,* 82 *N.J.* at 125–126, because (1) the price must be established by a single retailer, (2) no other affiliate is bound by the price and (3) customers are warned that neither the price nor the product may be available at any listed outlet, other than that of the retailer setting the price. He is optimistic that the device can work in the marketplace without substantial risk of illegal price-fixing or long-range public detriment. He contends that because some difficulty in public or private enforcement against anti-trust violations may exist, this does not compel this court to nullify the regulation. The Attorney General represents to this court that the ABC is currently and industriously investigating, and prosecuting administratively, suspected violators of § 24.10(a)(7). He urges that, if necessary, private antitrust actions may be brought to punish and restrain violators and compensate victims. He also urges that the two "selective" purchasing expeditions described in appellant's affidavits[2] are an insufficient basis for unseating a well-grounded regulation cast by the expert administrators of a sensitive industry.

■ In *Heir v. Degnan, supra,* at 120–122, our Supreme Court held that the Director of the Division of ABC has broad inherent power to regulate price competition in the alcoholic beverage industry in the public interest. The court also observed: "One advantage of administrative regulations is their flexibility and

---

[2]Appellant alleges that several purchasing trips at cooperative outlets shortly after § 24.10(a)(7) was adopted demonstrate adherence to the price-line established in the ads as evidence of illegal price-fixing.

ability to keep pace with current needs." *Id.* at 121. In another recent decision recognizing the strong powers of the regulators of a sensitive industry the Supreme Court observed: "Moreover, the regulation remains subject to modification and change in the light of the [Casino Control] Commission's experience with it. Should it prove to be unworkable, unfair or unnecessary, it will be the obligation of the Commission to take appropriate corrective action." *Bally Mfg. Corp. v. N. J. Casino Control Comm'n,* 85 *N.J.* 325, 335 (1981) (implied power of commission to limit to 50% number of slot machines acquired from any one manufacturer); *see, also, GATX Terminals Corp. v. Environmental Protect. Dep't,* 86 *N.J.* 46 (1981) (DEP has implied authority under Spill Compensation and Control Act to control design and construction of facilities subject to regulation). The generous breadth of implied power to the ABC is coupled with a strong presumption in favor of the validity of regulations published under such power. The burden is on the challenger to show that the regulation is unduly onerous, arbitrary, capricious or otherwise unreasonable. *N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 561 (1978).

The above discussion leads inevitably to three conclusions: (1) the ABC has broad powers to regulate pricing and competitive practices; (2) the debate on the merits of § 24.-10(a)(7) as an appropriate tool to foster healthy competition in the best interest of the industry and the public over the long haul is indeed robust and (3) the mechanics of the regulation are facially substantially different from the cooperative price advertising condemned in *Heir v. Degnan, supra.* Given these salient characteristics of the dispute, we conclude that the judicial hand must be stayed at this point. If the effect of the regulation in practice is to foster unlawful price-fixing, relief may be sought in an appropriate proceeding directed towards that evil.

Affirmed.