238 N.J. Super. 410 (1990)
570 A.2d 2
GEORGE FISCH AND SYDNEY FISCH, PETITIONERS-APPELLANTS,
v.
BUREAU OF CONSTRUCTION CODE ENFORCEMENT, NEW HOME WARRANTY PROGRAM, RESPONDENTS-RESPONDENTS, AND TODAY'S LIFESTYLE, INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1989.
Decided January 23, 1990.
*411 Before Judges MICHELS, DEIGHAN and BROCHIN.
Neal Herstik argued the cause for appellants (Blaustein & Wasserman, attorneys; Neal Herstik on the brief).
Mark I. Siman, Deputy Attorney General, argued the cause for respondents (Peter N. Perretti, Jr., Attorney General, attorney; Mary C. Jacobson, Deputy Attorney General, of Counsel; Mark I. Siman on the brief).
Michael W. Sozansky, Jr., argued the cause for intervenor Today's Lifestyle (Ligorano & Sozansky, attorneys; Michael W. Sozansky on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
This is an appeal of a final decision of the Commissioner of the Department of Community Affairs (Department) denying *412 petitioners George and Sydney Fisch (petitioners) an award under the New Home Warranty and Builders' Registration Act, (Act) N.J.S.A. 46:3B-1 et seq.
Petitioners and intervenor Today's Lifestyle (builder) participated in the claims procedures under the New Home Warranty Program (Warranty Program). The Bureau of Homeowner Protection (Bureau) denied the petitioner's claim in a letter dated February 19, 1987. The petitioners requested an administrative hearing which commenced on May 12, 1988. After the petitioners acknowledged that the defects in the construction of their home, which were the subject of the arbitration awards, were already being corrected, the Bureau and the builder moved for summary disposition.
The Administrative Law Judge (ALJ) concluded that because petitioners had contracted for the work on the subject matters in dispute, they were precluded from payment for that work under the Warranty Program. Based upon this voluntary action, the ALJ granted the motions for summary disposition and dismissed the petitioners' appeal. The Commissioner of the Department accepted the initial decision of the ALJ. Petitioners appeal from the Commissioner's decision.

I
The New Home Warranty and Builders' Registration Act (Act), N.J.S.A. 46:3B-1 et seq., governs the administration of Warranty Programs applicable to new residential construction. The Act requires all builders constructing new homes in New Jersey to register with the Department, N.J.S.A. 46:3B-5, -2. The Department must be shown proof of participation in a "security fund," N.J.S.A. 46:3B-5, either the State Warranty Fund or an approved alternative security fund. Id. The builder opting to join the State plan participates in a security fund (Fund) established by the State, N.J.S.A. 46:3B-7a. The purpose of the Fund is to protect the consumer from the builder who, after exhaustive administrative remedies, "is unable to or *413 willfully refuses to correct ... deficiencies. [In that event] an amount sufficient to cure the problem shall be paid from the fund to the [home]owner." N.J.S.A. 46:3B-7c.[1]
The Act stems from a voluntary Home Owner's Warranty Program (HOW), which was inaugurated by the National Association of Home Builders, Timpone and O'Flanagan, supra, note 1, at 218, and funded by a private insurance company. Id. at 219. The Act is modeled primarily after the voluntary HOW program. Id. at 222. The Warranty Program was adopted to address two major concerns: (1) that a builder may subject the consumer to a long and costly court battle before making payment on a legitimate claim; and (2) that a claim may be uncollectible if the builder goes out of business or is incapable of paying a large claim or series of claims. Id. at 221. The builders throughout the State, faced with the prospect of having 567 different municipal ordinances with which to comply, sought an alternative. Id. at 221. The Act preempts any municipal ordinances and regulations concerning builder licensing and registration. Id. at 224; N.J.S.A. 46:3B-12. Enforcement and collection is left in the hands of the Commissioner. Id. at 224; N.J.S.A. 46:3B-12.
The warranties established under the statute, in pertinent part, state:
(1) One year from and after the warranty date the dwelling shall be free from defects caused by faulty workmanship and defective materials due to noncompliance with the building standards....
(2) Two years from and after the warranty date the dwelling shall be free from defects caused by faulty installation of plumbing, electrical, heating and cooling delivery systems; however, in the case of appliances, no warranty shall exceed the length and scope of the warranty offered by the manufacturer.
(3) Ten years from and after the warranty date [the dwelling shall be free from] major construction defects. [N.J.S.A. 46:3B-3b(1), (2) and (3); see Timpone and O'Flanagan supra, note 1, at 224.]
*414 Under the procedure for enforcement of the Act, the owner notifies the builder in writing of the defect in the hope of an informal reconciliation. N.J.S.A. 46:3B-7c. The builder must respond within 30 days. N.J.A.C. 5:24-5.5(b)2. Failing in that, the parties may agree to arbitration with an arbitrator designated by the Department which issues a binding decision. N.J.A.C. 5:24-5.5(e)1(a). Where the parties cannot agree to binding arbitration, the Department will provide a hearing, N.J.A.C. 24-5.5(e)1(b), in accordance with the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-1 to -13. Once the owner initiates the dispute settling mechanism, the owner is barred from the use of all other legal remedies until the dispute settling mechanism is exhausted. N.J.S.A. 46:3B-9; see Timpone and O'Flanagan, supra, note 1, at 225. If the builder fails to perform, the Fund provides the money to make the repair. N.J.S.A. 46:3B-7a.[2]
The Commissioner is authorized and directed to prescribe by rule or regulation the new home warranty and the procedure for implementing and processing claims against the Fund. N.J.S.A. 46:3B-3a. Pursuant to this authority, the Commissioner adopted Regulations Governing New Home Warranties and Builder's Registration. N.J.A.C. 5:25-1.1 et seq.

II
Despite the controversy between the petitioners and the builder concerning the defects in construction and the remedies required to correct the defects, the procedural steps leading to the present appeal are essentially undisputed.
In 1984, petitioners purchased a new colonial style home from *415 Today's Lifestyle,[3] located at 6 Morgan Road in Flemington, Raritan Township, for the price of $208,125. A certificate of participation in the Security Fund was issued, effective September 30, 1984. On November 15, 1984, a Raritan Township construction official issued a certificate of occupancy.
After moving into the home, petitioners notified the builder of certain defects and omissions in the home. Subsequently, the parties consented to a formal dispute settlement by arbitration. As a result, on April 11, 1985, the arbitrator, Ellward Laskin, issued an award of arbitration, listing some 35 items to be corrected or rectified. On October 16, 1985, another award was issued supplementing the first award and noting several items which were previously addressed but not rectified.
On January 29, 1986, the Department, through Richard W. Vogel, A.I.A., its claims supervisor under the Warranty Program, sent a letter to petitioners enclosing his home inspection report based on the first two arbitration awards. The letter noted that the builder was in default of the Act and that the Warranty Program would stand in the builder's place and pay to have the defects corrected. The letter made comments concerning some of the items, but required petitioners to obtain bids for approval before the authorized corrections could be made: "You will find enclosed copy of our Work List which is to be used by you to obtain a minimum of two bids from contractors. When received they should be forwarded to our office for review. Upon approval, you will then be authorized to have the work done." (Emphasis supplied.)
In the meantime, on July 2, 1985, petitioners obtained a report from Engineer Inspections Systems, Inc. (EIS), listing some 14 defects in the home which did not comply with the "Boca Basic National Building Code, (1984 ed.)," adopted by the State as its Building Code. In addition to the 14 items, the *416 report contains a general discussion concerning other deficiencies. Petitioners forwarded a copy of the report to the Raritan Township construction official who, on September 30, 1985, wrote to petitioners and essentially discounted many of the 14 items commented upon by EIS.
Petitioners then forwarded to the Warranty Program's claims supervisor two estimates to correct or rectify the defects in the home. One, dated November 10, 1986, from Princeton Home Inspection, itemizes the work to be performed at a total cost of $52,450 to rectify the defects. Included among the items was a removal of all siding on the property and installation of a new roof. Petitioners submitted a second estimate, dated November 11, 1986, from Ray Jones, a roofing and siding contractor. The second estimate, which apparently was a partial estimate, was for $23,725 and it was also forwarded to the claims supervisor. Here again, the estimate indicated, among other things, the complete removal of the roof and siding and the reinstallation of a new roof and siding. Neither of the estimates followed the itemized Work List form sent to petitioners by the claims supervisor. The Work List required the estimators to fill in specific amounts for each of the 14 items, none of which referred to roof and siding replacement but merely referred to roof shingle repair of some roof shingles and the closing of gaps on some of the siding.
In November 1986, petitioners, their attorney and the claims supervisor met to discuss the inspection reports submitted by petitioners. As a result, on November 25, 1986, the claims supervisor wrote to petitioners rejecting the estimates:
After a full review of the claim file, I will make note for the record that on January 29, 1986, you were provided a copy of our inspection report based upon the two above-referenced Arbitration Awards. Included with that transmittal was the Work List which was to be used by you to obtain a minimum of two bids from contractors.
Based upon your most recent submissions and a review of same, it is regulated that the Arbitrators' Awards must stand and our inspection report reflects the extent of corrective work given in those decisions. The report from Princeton Home Inspection Service is totally inappropriate with regard to the above referenced claims, since the issues have been determined. As to the partial bid *417 submitted, it is rejected since it far exceeds the scope of work which has been authorized.
Petitioners were further notified that "if two bonafide [sic] bids from contractors were not received in our office within 45 days from receipt of this notice, we will close your claim." This deadline was extended to March 15, 1987. However, on March 4, 1987, petitioners appealed the decision on the two arbitration awards to the Division of Housing and Development.
On July 23, 1987, a third arbitration award was issued noting the claims supervisor's list containing four items which must be repaired or corrected:
Item 24: Lights dim in kitchen, family room and basement: BUILDER shall correct.
Item 28: Floor in den hallway by family room has bow: BUILDER shall correct.
Item 31: Floor in den slopes: BUILDER shall correct.
Item 34: Fireplace does not function properly: BUILDER shall correct.
The award further noted that "[m]any small items on the [claims supervisor's] list of things to be done and some of the items on my original findings were corrected. However, the four items mentioned above must be addressed and repaired or corrected."
On August 11, 1987, the claims supervisor again sent to petitioners a "Work List addendum" listing four items which were to be added to the original Work List dated January 29, 1986. In response to the Work List addendum, it appears that petitioners submitted four additional estimates: J-Mar Building Corp., dated September 18, 1987 in the amount of $63,050; Bethel Roofing, dated May 27, 1987 in the amount of $39,500; Home Completers, Inc., dated July 7, 1987 in the amount of $46,000 and G and A Gutters, Inc., dated July 7, 1987 in the amount of $57,595. Again, all of these estimates included removal and replacement of the roof and siding.
On May 12, 1988, a hearing was held before an Administrative Law Judge (ALJ). At that hearing, it was revealed for the first time that the subject matter of the appeal involving the arbitration awards had been and was still being repaired by *418 petitioners. After some discussion, the Bureau and the builder both moved for summary disposition requesting dismissal of petitioners' appeal. In dismissing the appeal, Judge Persichelli held as follows:
In this case, the homeowners were on notice prior to contracting for the work to be performed that they did not have authorization to contract for the work and subsequently seek fund reimbursement. This issue was at the very heart of the appeal. The appeal focused on the nature or extent of the arbitration awards, i.e., what precisely was covered under the awards and the bona fide nature of the bids submitted. Here, the homeowners have deliberately removed themselves from the explicit procedures provided in the Bureau's regulations. By contracting for the work, which included the defects in issue, the homeowners have eliminated the opportunity of further state inspection, determination and approval or disapproval. The Fisch's have substituted themselves as the program regulators under the guise of "mitigation of damages." At this late stage in the proceedings, the assertion of mitigation of damages is virtually fraudulent. The ongoing communications between the petitioners and Program regulators reveal that the petitioners were well versed in the Program requirements; they retained counsel and together with counsel and through counsel, communication was broadened to the point that petitioners were fully aware that the agency's approval of work to be performed as well as cost approval was required to receive payment from the fund. Through counsel, petitioners perfected this appeal. Extensive conferences were conducted at the Office of Administrative Law which further revealed the claimants' familiarity with the Program's requirements. Thus, it was not the product of innocence, ignorance or naivete, that eventually prompted petitioners' unilateral decision to hire their own contractor, at their own agreed upon price. The homeowners' decision was the product of conscious, informed and deliberate thought; I find that it had little, if anything, to do with mitigation of damages. I FIND that the homeowners have contracted for work on subject matters in dispute, and in the absence of bona fide estimates and Bureau consent, acquiescence or approval, authorized their agent to perform the designated work. I CONCLUDE that Mr. & Mrs. Fisch, by their voluntary actions, are precluded from seeking payment from the New Home Warranty Fund.
On August 31, 1988, the Commissioner of the Department adopted the initial decision of the ALJ.[4] On this appeal, petitioners raise the following issues:

*419 I The Administrative Court's dismissal of appellant's claim violated both the spirit and the purpose of the New Home Warranty and Builder's Registration Act.
II The dismissal of appellant's claim was arbitrary, capricious, unreasonable and premised upon a clear misinterpretation of N.J.A.C. 5:25-5.5(2).
III The Appellate Tribunal is not bound by the Administrative Court's interpretation of N.J.A.C. 5:25-5.5(2).
IV The Appellate Court must reverse the Administrative Court's dismissal and remand the matter for a plenary hearing to determine whether the appellant should be reimbursed for all or part of the costs of the repairs made to their home.
V The Administrative Law Judge's reliance upon the case of Ocean House Condominium Association v. Bureau of Construction Code Enforcement to support the dismissal of the petitioner's claim was misplaced.
VI The Administrative Court's granting the summary judgment was erroneous in that the decision flew in the face of commonly accepted judicial principles that caution is to be exercised on a motion for summary judgment.

III
Before commencing upon a discussion of the issues raised by petitioners, it is well to iterate the basic principles concerning the scope of judicial review of administrative agency determinations. Courts can act only in those rare circumstances when it is clear that the agency action is inconsistent with its legislative mandate. Williams v. Department of Human Services, 116 N.J. 102, 108, 561 A.2d 244 (1989). Though sometimes phrased in terms of a search for "arbitrary, capricious or unreasonable" action, Campbell v. Department of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963), the judicial role is restricted to three inquiries: (1) whether the agency's action violated the enabling act's express or implied legislative policies, (2) whether there was insubstantial evidence in the record to support the findings on which the agency based its actions, and (3) whether in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made after weighing the relative factors. Williams, 116 N.J. at 108, 561 A.2d 244.
Under the Warranty Program, the Commissioner is "authorized and directed" to prescribe by rule or regulation procedures *420 for processing claims against the Fund in the form and manner which he prescribes. N.J.S.A. 46:3B-3a.
Pursuant to the statutory authority, the Director of the Division of Housing and Urban Renewal adopted N.J.A.C. 5:25-5.5(e) which provides as follows:
Final payment in event of builder default rules are as follows:
1. If any builder, after receiving the decision of the arbitrator, the Bureau of Construction Code Enforcement or the Director, as the case may be, refuse to correct the defect within the time period specified in the decision, then the owner may file a request for payment with the Department. Notwithstanding any conciliation agreement or arbitration award, the Division shall inspect the home for the purpose of determining if the defect is covered by the warranty and upon verification that the defect is covered and upon submission of the bids and review thereof as provided in (e)2. below, the Director shall certify the amount of the award to the Treasurer....
2. The amount of the award shall, in all cases, be based upon the lower or lowest of two or more bona fide estimates acceptable to the Division for the work intended to be covered. Payment shall be made jointly to the owner and to the contractor performing the work upon certification by both of them that the work is complete and the defect has been removed....
In their first four issues, petitioners raise several arguments in support of their contention that summary disposition of their claim was improper. Under the first issue they contend that "[b]ids reflecting the work needed to effectuate the repairs were submitted and summarily and arbitrarily rejected by the narrow-minded claims supervisor." We categorically reject this contention.
Petitioners persistently failed to follow the regulations requirements for an orderly disposition of their claim. They sought, in effect, to write their own rules, regulations and procedure by defying the orderly procedure prescribed for all homeowners.
On the one hand, petitioners suggest that the Act does not require that "a homeowner will not be reimbursed for any work performed which was not previously authorized by the Department" but contradict themselves where they state that "[t]he work still must be authorized and completed to the Department's satisfaction." They then contend that "[i]f the Legislature *421 wanted to require the homeowner to get written authorization for all work performed, it would have said so in plain English." They contend that "[i]n a proper reading the regulation, one recognizes that it describes only when payment is to be made and not when work may be performed."
As we understand petitioners' contentions, the homeowner should be permitted to proceed to rectify whatever work is deemed necessary and then present to the Bureau their claim for the work done. Substitution of this procedure would require "focusing the administration of the program on an individual basis," which petitioners may not do. Dougherty v. Human Serv. Dep't., 91 N.J. 1, 9, 449 A.2d 1235 (1982). Regulations and statutes are not construed on semantic niceties, but are construed in accordance with the ordinary meaning of the language used and the purpose intended by Legislature; Svilokos v. Dept. of Comm. Affairs, 220 N.J. Super. 441, 444, 532 A.2d 743 (App.Div. 1987); see State v. Stern, 197 N.J. Super. 49, 53, 484 A.2d 38 (App.Div. 1984).
Here, the regulations require that the home be inspected to determine if the defect is covered by the warranty, and, "upon verification that the defect is covered and upon submission of bids and review thereof ... the Director shall certify the amount of the award to the Treasurer, who shall make payment from the fund." N.J.A.C. 5:25-5.5(e)(1) (emphasis supplied). Subsection 2 then requires that "[t]he amount of the award shall, in all cases, be based upon the lower or lowest of two or more bona fide estimates acceptable to the Division for the work intended to be covered. The payment is to be made jointly to the owner and to the contractor" but only after "certification by both of them that the work is complete and the defect has been removed...." N.J.A.C. 5:25-5.5(e)(2).
Our dissenting colleague notes that "[m]ore than three and a half years after they moved into the house, their efforts to obtain a remedy for its defects were still entangled in procedural complications. Without waiting any further for the completion *422 of a tortuous administrative process, the Fisches contracted to have the defects in their house repaired without the specific prior authorization of the Department of Community Affairs." We are constrained to note that from January 29, 1986, the date that the inspection report on the first arbitration awards were forwarded to petitioners together with the forms to be used to obtain minimum bids, to March 4, 1987, the date petitioners filed an appeal, a period of some 13 months, they failed to submit two bona fide bids acceptable to the Department for the work intended to be covered in accordance with the arbitration awards and in compliance with the Work List forwarded to them. The hearing before the ALJ was not scheduled until May 12, 1988, a period of some 14 months. Thus, 27 months were consumed by the petitioners simply because of their failure to follow the procedural rules concerning the processing of a claim under the Warranty Program.
Not only did petitioners fail to submit bona fide bids, but, on the contrary, they submitted bids which went far beyond the scope of the work called for in the arbitration awards and the Work Lists. They then proceeded to contract for and complete repairs according to their own concept of necessary repairs. In effect, petitioners seek to have a blank check for all repairs which they subjectively feel should be made to put the home in a condition satisfactory solely to them.
The Bureau acts as the fiduciary of the New Home Warranty Security Fund. It is the Bureau's responsibility to preserve the fiscal integrity of the Fund. In preserving this fiscal integrity, the regulations clearly provide for written authorization by the Bureau and satisfactory completion of the repairs prior to payment. The Commissioner held that ad hoc deviations from the well established claims procedures designed to prevent exorbitant claims and preserve the integrity of the Fund could not be countenanced. In passing on an administrative agency's exercise of statutorily delegated responsibility, we accord it a strong presumption of reasonableness. Newark v. Natural Resource Coun. Dept. Env. Prot., 82 N.J. 530, 539, 414 A.2d *423 1304, cert. den. 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980). We will not substitute our judgment for the wisdom of agency action if that action is statutorily authorized and not arbitrary or unreasonable. Ibid. As long as the action is within the fair contemplation of the enabling statute, that action must be accorded a presumption of validity and regularity. See Motyka v. McCorkle, 58 N.J. 165, 181, 276 A.2d 129 (1971). If there is any fair argument in support of the agency's action or any reasonable ground for difference of opinion among intelligent and conscientious officials, "the decision is conclusively legislative, and will not be disturbed unless patently corrupt, arbitrary or illegal." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-563, 384 A.2d 795 (1978), quoting Flanagan v. Civil Service Dept., 29 N.J. 1, 12, 148 A.2d 14 (1959). Where special expertise is required, as in this case, an even stronger presumption of reasonableness exists. See Newark v. Natural Resource Council, 82 N.J. at 540, 414 A.2d 1304.
In light of petitioners' conduct and the Commissioner's adoption of the ALJ's findings, we find nothing inequitable or unfair. Petitioners ignored, not once but twice, the directions of the Bureau and attempted to invoke their own conception to satisfy their personal desires in completing the home without prior authorization. In addition to the precise written instructions given to the petitioners on two occasions, they also met with the claims supervisor twice, during which the claims supervisor clearly and explicitly informed them that the estimates they submitted were entirely out of order and he again informed them of the proper procedure. If this were not enough, on February 19, 1987, the claims supervisor wrote to petitioners' attorney, with a copy to petitioners, advising that:
The bottom line on this matter is we will not accept a scope of work that is in direct contradiction to the Arbitration Award. I therefore do not feel it necessary to review each item of the report since our Work List is based strictly upon the arbitrator's decisions.
*424 Lastly petitioners contend that on a summary judgment motion a court "is to determine whether there is a genuine issue as to a material fact, but not to decide the issue if he finds it to exist." They argue here that "the Court relied upon a twisted reading of N.J.A.C. 5:25-5.5(e)1., 2, to justify its decision. Clearly the court's action was, at the very least, premature."
Initially, we disagree that the ALJ relied upon a "twisted" reading of the regulation. Additionally, there is no factual dispute that petitioners failed to comply with the procedures for processing a claim under the Warranty Program. The dismissal was on procedural, not substantive grounds, for failure to comply with regulations. The dismissal of petitioner's appeal is analogous to the dismissal of a complaint for failure to comply with discovery rules, R. 4:23-5.
While dismissal of a party's cause of action is a drastic sanction, it may be invoked where undue delay, as here, has occurred, Comeford v. Flagship Furniture Clearance Center, 198 N.J. Super. 514, 517, 487 A.2d 1257 (App.Div. 1983), certif. den. 97 N.J. 581, 483 A.2d 126 (1984), or where a litigant fails to file a complaint within the time period required by the statute of limitations, or a party fails to apply for an order permitting the filing of a late notice within one year under N.J.S.A. 59:8-9 of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq.
Affirmed.
BROCHIN, J.A.D. (dissenting).
Three arbitration awards rendered under New Jersey's New Home Warranty and Builders' Registration Act, N.J.S.A. 46:3B-1 and following, have determined that the new house constructed for Mr. and Mrs. Fisch by Today's Lifestyle, Inc., a licensed building contractor, was seriously defective. More than three and a half years after they moved into the house, their efforts to obtain a remedy for its defects were still entangled in procedural complications. Without waiting any *425 further for the completion of a tortuous administrative process, the Fisches contracted to have the defects in their house repaired without the specific prior authorization of the Department of Community Affairs. Solely for that reason, and without any adjudication on the merits, their claims were dismissed. By affirming that dismissal, this court has denied them any administrative remedy and, because N.J.S.A. 46:3B-9 provides that "initiation of procedures to enforce a remedy shall constitute an election which shall bar the owner from all other remedies," our ruling may also have precluded a money judgment against the builder.[1]See Rzepiennik v. U.S. Home Corp., 221 N.J. Super. 230, 236-237, 534 A.2d 89 (App.Div. 1987). Because I am of the view that the pertinent statutes and regulations do not require so unjust a result, I dissent.
Today's Lifestyle, Inc. agreed to construct a house for Mr. and Mrs. Fisch, and to sell it to them for $208,125. On November 15, 1984, a certificate of occupancy was issued and the house was turned over to the buyers. The Fisches found that their new house was substantially defective and, when they were unable to reach an agreement with the builder to rectify the defects, they filed a claim on April 12, 1985, pursuant to the New Home Warranty and Builders' Registration Act. See N.J.S.A. 46:3B-1 and following. In accordance with the procedure established by the Commissioner of the Department of Community Affairs, three separate arbitration awards were issued, the first dated June 18, 1985; the second, October 21, 1985; and the third, July 23, 1987. Together, these three awards found 34 uncorrected defects, some of them substantial.
*426 Following the issuance of the awards, the builder was given another opportunity to correct the defects. When the allotted time had passed, an inspector for the Division of Housing and Development of the Department of Community Affairs inspected the Fisches' home on some unspecified date prior to January 29, 1986, and issued a "work list", purportedly based on the arbitration awards of June 18 and October 21, 1985. (A supplementary work list based on the July 23, 1987, arbitration award was issued on August 11, 1987.) The January 29, 1986, work list enumerated fourteen items to be repaired. The Fisches were directed to obtain bids from two contractors stating the prices at which they would be willing to make the repairs listed in the work list, and to submit the bids to the Division "for review." They were told that "Upon approval [of one of the bids], you will then be authorized to have the work done."
The Fisches were apparently convinced that the Department's work list did not encompass all of the repairs needed to rectify the uncorrected defects that were specified in the arbitrators' awards. They presented the Department with a November 10, 1986, inspection report by Princeton Home Inspection Inc. and an estimate by Ray Jones, Roofing and Siding Contractor, dated November 8, 1986. Various other estimates and proposals are also included in the Fisches' appendix, but we have not been told whether those documents were also submitted. On February 19, 1987, Mr. Richard A. Vogel, claims supervisor of the New Home Warranty Program of the Bureau of Construction Code Enforcement in the Division of Housing of the Department of Community Affairs, wrote a letter to the Fisches' attorney, rejecting the Princeton Home Inspection Report and, by implication, whatever other bids had been submitted, on the ground that they included repairs not encompassed by the work list.
The Fisches appealed that decision which rejected their bids as a measure of the indemnification to which they were entitled. Their appeal was transferred to the Division of Administrative Law to be heard by an administrative law judge as a contested *427 case. Following the luncheon recess on the first day of hearings, the Fisches' attorney was asked who his remaining witnesses would be. He replied that one of them was a principal of a contractor that was doing some work on the Fisches' house and, in response to further inquiries, that some of that work dealt with defects which were the subject of the administrative proceeding. On the basis of that information, the deputy attorney general representing the Bureau of Construction Code Enforcement moved to dismiss the Fisches' claim. He contended that by repairing the defects at issue without prior authorization from the Bureau, the Fisches had disqualified themselves from recovery. No further evidence was presented relevant to the scope of the work contemplated by the bids which the Fisches had submitted to the Department. No decision was ever made which determined whether the bids which the Fisches had obtained encompassed work in excess of that necessary to repair the defects that the arbitration awards had ruled were the responsibility of Today's Lifestyle. Instead, after further briefing and argument of the issue whether the Fisches had forfeited their right to relief, the administrative law judge issued an initial decision which recommended dismissal of the Fisches' claim on the ground that their contracting for repairs without prior approval violated N.J.A.C. 5:25-5.5(e)2. The Commissioner of the Department of Community Affairs adopted the initial decision of the administrative law judge. The Fisches have appealed the Commissioner's ruling to this court.
Nothing in the language of The New Home Warranty and Builders' Act itself requires the forfeiture of the claim of an impatient home owner who repairs his new house before the Department of Community Affairs has approved the bid of the contractor who is to do the work or before the administrative procedure under the Act has reached its conclusion. However, my colleagues hold that that result is justified by N.J.A.C. 5:25-5.5(e)2. That regulation states:
(e) Final payment in event of builder default rules are as follows: ...

*428 2. The amount of the award shall, in all cases, be based upon the lower or lowest of two or more bona fide estimates acceptable to the Division for the work intended to be covered.... Payment shall be made only for work authorized in writing by the Department and upon completion to the Department's satisfaction. [Emphasis added.]
Reasonably interpreted, N.J.A.C. 5:25-5.5(e)2 does not require the Fisches to forfeit their claim because, three and a half years after they closed title, their patience had expired and they had their house repaired. The "work list" which the Bureau issued, describing the work to be performed, "authorized in writing" the various repairs appropriate to remedy the defects found by the arbitration awards. The regulation's declaration that "Payment shall be made only for work authorized in writing by the Department...." merely reiterates the proposition that indemnification from the fund administered by the Department is available only for work which the Department has determined is necessary to repair those defects which constitute breaches of the builder's warranty.
Since the Fisches contended that the Department work list did not include all appropriate repairs, they had the right to contest that issue. They are entitled to be compensated for those repairs necessary to give them a house that complies with their warranty. Of course, they will have to prove the cost of those repairs and prove that they are reasonably appropriate to correct the defects for which the arbitration awards found the builder responsible. But nothing in the regulation required the Fisches to continue to delay needed repairs for longer than the three and a half years that had already elapsed.
The New Home Warranty program was intended to provide an injured home buyer with a favorable administrative remedy which would be an alternative to a conventional suit against a builder who had constructed and sold him a defective home. However, if the builder responsible for the defects is solvent, the Department's interpretation of its regulations has made the administrative procedure a much less advantageous remedy than a damage suit would be. A home buyer who sues for and *429 establishes his builder's breach of warranty in a damage action is entitled to collect damages measured by the reasonable cost of repairing the defects of his house for which his builder is responsible, whether the home buyer repairs the defects or not. See, e.g., Pearce & Pearce v. Kroh Bros. Development Co., 474 So.2d 369, 371 n. 2 (Fla. Dist. Ct. App. 1985); Greene v. Bearden Enterprises, Inc., 598 S.W.2d 649, 653 (Tex. Ct. App. 1980). Of course, the claimant has the burden of proving his damages. His proofs may be more difficult if he has not repaired the defects or if, rather than merely rectifying the defects, he has improved his property. But in a damage suit, he would be entitled to recover a judgment for his damages even if he chose not to make the repairs or chose to improve his property rather than merely to correct its defects. Neither the language nor the purpose of the New Home Warranty Act justifies a different rule when an injured home buyer seeks a remedy by the administrative procedure which that statute has created. If the regulations call for the Fisches to forfeit their remedy because they made repairs or renovations to their house without waiting for an approval from the Department of Community Affairs more specific than its work list, I would hold that those regulations are void for inconsistency with the statute. Cf. State v. Stroger, 97 N.J. 391, 410, 478 A.2d 1175 (1984), cert. den. 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 974 (1985); In re Barnert Memorial Hospital Rates, 92 N.J. 31, 39, 455 A.2d 469 (1983); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 561, 384 A.2d 795 (1978).
I would reverse the dismissal of the Fisches' claim and remand the proceeding to the Office of Administrative Law. The Fisches should have the opportunity to prove the reasonable cost of correcting those defects in their house which the arbitrators' awards established were the responsibility of Today's Lifestyle, Inc.
NOTES
[1] The foregoing summary of the Act is taken from Timpone & O'Flanagan, "Home Owner Warranties in New Jersey," 3 Seton Hall Legislative Journal, 203, 222-223 (1978) (Timpone and O'Flanagan).
[2] Compare Rzepiennik v. U.S. Home Corp., 221 N.J. Super. 230, 534 A.2d 89 (App.Div. 1987) (a claim under the New Home Warranty Act), with Postizzi v. Leisure + Technology, 235 N.J. Super. 285, 562 A.2d 232 (App.Div. 1989) (a claim under the private HOW Program).
[3] On official papers, B & I Construction, not Today's Lifestyle, is listed as the builder.
[4] The petitioners have also filed a complaint in the Superior Court, Law Division, Hunterdon County, Docket No. W-000067-86. The present status of that matter is not before us.
[1] During the pendency of the administrative proceedings, the Fisches commenced a damage action against Today's Lifestyle, Inc., its principals and affiliated corporations. The defendants moved for summary judgment in reliance on N.J.S.A. 46:3B-9. The Law Division granted the summary judgment only in part, holding that the plaintiffs were entitled to litigate any claims which were not asserted in the administrative proceeding. Defendants moved for leave to appeal, but their motion was denied. I do not intend to express an opinion on the merits of that case.