811 A.2d 918 (2002)
356 N.J. Super. 132
Bansi and Priya LAKHANI, Appellants,
v.
BUREAU OF HOMEOWNER'S PROTECTION, NEW HOME WARRANTY, DEPARTMENT OF COMMUNITY AFFAIRS, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 2002.
Decided December 12, 2002.
*919 *920 Robert E. Laux, Hackensack, argued the cause for appellants (Oury & Mizdol, attorneys; Dennis J. Oury and Mr. Laux, on the brief).
Patricia E. Stern, Deputy Attorney General, argued the cause for respondent (David Samson, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ryan A. Harris, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, LEFELT and WINKELSTEIN.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
The New Home Warranty and Builders' Registration Act, N.J.S.A. 46:3B-1 to -12 (the Act), imposes responsibility upon a new home builder for any covered defect occurring during an applicable warranty period, N.J.S.A. 46:3B-4, which includes a ten-year period for major construction defects, N.J.S.A. 46:3B-3(b)(3). The Act requires every builder to register with the Department of Community Affairs and to participate in the new home warranty security fund (the Fund). N.J.S.A. 46:3B-5.[1] The Commissioner of Community Affairs (Commissioner) establishes the amounts builders must pay into the Fund to cover anticipated claims and administration costs. N.J.S.A. 46:3B-7(a). The Fund is required to pay the homeowner an amount sufficient to correct a covered defect if a builder is unable or wilfully refuses to correct the covered defect or the claim arises during the third to tenth year of the warranty. N.J.S.A. 46:3B-7(c); N.J.A.C. 5:25-5.2(a). The Commissioner has delegated responsibility for processing claims against the Fund to the Bureau of Homeowner Protection (Bureau). N.J.A.C. 5:25-1.4. The Commissioner is required to adopt rules and regulations prescribing specific standards for the statutorily mandated warranties and procedures for processing claims. N.J.S.A. 46:3B-3(a).
One of the regulations adopted by the Commissioner to implement the Act requires a homeowner who submits a claim to obtain prior authorization from the Bureau for any covered repair work. N.J.A.C. 5:25-5.5(e)(2). In Fisch v. Bureau of Constr. Code Enforcement, 238 N.J.Super. 410, 420-21, 570 A.2d 2 (App. Div.1990), we sustained the validity of this administrative regulation. In the present appeal, we must decide whether the Bureau may invoke this regulation as the basis for denial of a claim if the Bureau's arbitrary processing of a claim has prevented a homeowner from obtaining timely authorization for covered repairs. We conclude that it is unreasonable to deny a *921 claim based on a homeowner's failure to obtain the Bureau's prior authorization to proceed with covered repairs if the Bureau's own arbitrary processing of the claim prevented the homeowner from obtaining that authorization.

I
In 1991, appellants, Bansi and Priya Lakhani, purchased a new home for $850,000. In 1996, appellants began to notice cracks and other signs of structural defects in the home. Appellants wrote a letter to the builder concerning these conditions, but were informed he was bankrupt.
On September 27, 1996, appellants filed a claim with the Bureau. In early October, the Bureau informed appellants that their home was in the seventh year of warranty and that their claim was therefore limited to "major structural defects," as defined by N.J.A.C. 5:25-1.3.
On October 3, 1996, Bart Sowul, a Bureau claims supervisor, inspected appellant's home. On October 10, 1996, Sowul sent a letter informing appellants that his inspection had "revealed a major structural defect which is covered within the ten year warranty period" and that "[t]he State Plan will now assume the responsibility to pay for having the warranted defect corrected." The inspection report accompanying Sowul's letter indicated that three beams on the right side of the first-floor framing were deflecting due to concentrated loads on the second floor and that the wall studs along two walls had been cut excessively to accommodate plumbing fixtures. Sowul authorized appellants to repair or replace the three deflecting beams and the first floor exterior bearing walls. The inspection report rejected appellant's other warranty claims on the grounds that the alleged defects either were not visible or did not constitute "major structural defects." In addition, the letter directed appellants to submit certain documentation in support of their claim.
Around the same time as Sowul's initial inspection, the structural engineering company which had inspected the home on appellants' behalf, T.R. Bharati, P.E. (Bharati) advised appellants that the home was unsafe and should be vacated immediately. Appellants followed this advice and temporarily relocated to a relative's home. When appellant Bansi Lakhani testified three years later at an administrative hearing, he and his family still had not been able to reoccupy their home.
On November 8, 1996, appellants sent Sowul a report prepared by Bharati which identified other major structural defects in the home and asked Sowul to conduct a follow-up inspection.
On November 18, 1996, Sowul replied that Bharati's report indicated that its inspections of the home were incomplete and that Sowul would not conduct a further inspection until the "investigations are complete and all deficiencies are known through reasonable diligence and substantiated."
On November 19, 1996, appellants sent another letter to Sowul, which indicated that "with the exception of any latent defects that cannot be discovered at this time, . . . Bharati . . . does not foresee submission of any additional defects, thus no additional inspections would be required[,]" and requested Sowul to "perform a follow up inspection at [his] very earliest convenience."
On December 3, 1996, Sowul informed appellants he would not conduct a follow-up inspection until they sent him certain documents he had requested in his October 10, 1996 letter.
On December 30, 1996, appellants sent Sowul extensive documentation in *922 support of their claim, which included a complete work list and report by Bharati that discussed the probable causes of the defects in their home and general cost estimates for completion of the recommended repairs. The letter transmitting these documents stated that "[t]he above documents will be utilized to obtain bids in accordance with the sealed construction documents and specifications for the repair/replacement project." In addition, appellants requested Sowul to "now consider conducting the follow up inspection to address the additional items discovered by Mr. Bharati since your inspection."
On January 8, 1997, appellants sent Sowul two bid estimates from building contractors to perform the work required to correct the defects covered by the warranty, one by Vincent De Rosa, Inc. (De Rosa) for $629,503 and the other by D. Gencarelli Building & Equipment Corp. (Gencarelli) for $654,615.
On January 14, 1997, appellants sent Sowul a letter enclosing a copy of a contract with Bharati for the engineering services required in connection with the repairs covered by the warranty and requesting payment in the amount of $24,900 for those services.
On January 22, 1997, Sowul sent appellants a letter in response to their December 30, 1996 letter, which asserted that appellants had failed to provide any of the documents he had requested in his October 10, 1996 letter. In addition, Sowul stated that "the bid prices for the items on the work list dated October 10, 1996 are EXCESSIVELY HIGH AND UNACCEPTABLE for the amount of work involved" and that appellants were required to submit two new bids. Although Sowul's letter made no reference to appellants' January 14, 1997 letter transmitting the contract for Bharati's engineering work, Sowul later testified that the bid price he found to be excessive was the $24,900 contract price for Bharati's work. Appellants indicated that they understood this part of Sowul's letter to refer to the bid estimates from the building contractors that they had sent Sowul on January 8, 1997.
On February 10, 1997, Sowul sent a letter to appellants summarily rejecting their claim on the ground that they had not furnished all the documents requested in his October 10, 1996 letter:
This letter is subsequent to the New Home Warranty Program's letters of October 10, 1996 and January 22, 1997, also subsequent to the telephone conversation made by [appellants' attorneys] on January 29, 1997.
Based upon your failure to submit the required documents specified, the Department cannot continue to process your claim.
Therefore the claim, referred to above, is being CLOSED as of the transmittal date of this letter.
On February 14, 1997, appellants sent Sowul a letter which indicated that they had submitted all the documents he had requested on October 10, 1996. This letter noted that in the January 29, 1997 telephone conversation to which Sowul referred in his February 10, 1997 letter, the only document Sowul had claimed was missing from appellants' submission was an estimate from a second "licensed design professional." Appellants' letter stated that they had not read Sowul's October 10, 1996, letter to require submission of a second estimate for this work. Appellants' letter also stated that they had been seeking to obtain such a second estimate when they received Sowul's summary rejection of their claim:
[Y]our original request for estimates did not specify the requirement of submitting two estimates from licensed design *923 professionals. It was not until January 29, 1997 that you provided your interpretation of the word "contractor" to include a licensed design professional (i.e., engineers and architects). Having then accepted your definition of "contractor" to include licensed design professionals, we immediately endeavored to obtain a second estimate from a licensed design professional as we have already submitted the two required contractors' estimates pursuant to the program requirements.
Having informed you of our intent to obtain a second estimate from a licensed design professional during our conversation on January 29, 1997, I find it especially disturbing that you would move to close this file just seven business days after our conversation.
Appellants ended their letter by demanding that their claim be reopened and reiterating their request for Sowul to conduct a re-inspection of their home with respect to the additional structural defects discovered after the initial inspection.
On February 24, 1997, Sowul sent appellants a letter denying the request for reconsideration of the summary rejection of their claim, without any additional comment concerning their compliance with the Bureau's procedures.
On April 22, 1997, appellants applied to the Commissioner for emergent review of Sowul's summary rejection of their claim. The Bureau referred this application to the Office of Administrative Law (OAL). The parties subsequently entered into a settlement under which the Bureau agreed to reopen appellants' claim.
On July 9, 1997, Sowul conducted the follow-up inspection of appellants' home that appellants had requested on November 8, 1996. However, Sowul failed to provide appellants with an inspection report describing the results of this inspection until the first day of the administrative hearing held more than a year and a half later.
On August 11, 1997, appellants sent a letter to the Deputy Attorney General assigned to the Bureau which, among other things, requested the Bureau to transmit a copy of the report of Sowul's July 9, 1997 inspection.
On October 21, 1997, after another three months elapsed without the Bureau sending appellants this report, appellants again applied to the Commissioner for emergent relief. Approximately a month later, the Bureau referred this application to the OAL.
On February 2, 1998, appellants and the Bureau entered into another settlement agreement, one term of which was that responsibility for handling of appellants' claim would be transferred from Sowul to another inspector. However, the Bureau delayed another four months before reassigning the file. When the new inspector, Brian Frugis, was finally designated, he decided that another inspection of appellants' home was required "to determine if [appellants'] complaint falls into the category of a major structural defect." However, by the time Frugis conducted an inspection on June 9, 1998, appellants had entered into a contract for repairs to their home and the work had started. Frugis then denied appellants' claim in its entirety because appellants had contracted to have the work performed without obtaining the Bureau's prior authorization, as required by N.J.A.C. 5:25-5.5(e)(2).
Appellants appealed this determination to the Commissioner, who referred the matter to the OAL. An Administrative Law Judge (ALJ) held seven days of hearing from March 25, 1999 to December 22, 1999. On the first day of the hearing, the Bureau finally produced the report of Sowul's *924 July 9, 1997 follow-up inspection. This report identified significant additional major structural defects in appellant's home that had not been discovered in Sowul's initial inspection on October 8, 1996.
On July 31, 2000, the ALJ issued an initial decision which found that Sowul was "at best, less than cooperative with [appellants'] claim" and concluded that Sowul's "closing of [appellants'] claim [on February 14, 1997] was arbitrary." Nevertheless, the ALJ concluded that "[i]f the claimant undertakes a repair without prior authorization, the claimant cannot recover from the fund, no matter how protracted and tortuous the process, and regardless of any considerations of fairness." Therefore, the ALJ concluded that "[r]egardless of Sowul's arbitrary actions," appellants had "taken themselves out of the claim procedure by undertaking the repairs [without the Bureau's prior authorization], thereby eliminating any opportunity for further inspection, determination and approval of the underlying defects, as well as the method and the costs of the repairs." Accordingly, the ALJ determined that appellants "cannot recover payment for the cost of repairs to any of the defects, including the major structural defects cited by Sowul in his inspections."
The Commissioner adopted the ALJ's recommended conclusion that appellants' claim should be denied in its entirety. However, without a detailed discussion of the administrative record, the Commissioner summarily rejected all of the ALJ's recommended findings concerning Sowul's arbitrary handling of appellants' claim.
On appeal, appellants argue that the Commissioner's final decision is inconsistent with the policies underlying the Act and therefore arbitrary, capricious and unreasonable. We agree with the ALJ's factual findings concerning the Bureau's arbitrary and unreasonable handling of appellants' claim. However, we disagree with the ALJ's conclusion that the Bureau nevertheless properly denied the claim because appellants eventually undertook to repair the structural defects in their home without obtaining the Bureau's prior authorization. Accordingly, we reverse the Commissioner's final decision and remand the case for a determination of the amount appellants are entitled to recover from the Fund.

II
The Legislature has delegated responsibility for processing claims against the Fund to the Commissioner, N.J.S.A. 46:3B-3, and the Commissioner has subdelegated this responsibility to the Bureau, N.J.A.C. 5:25-1.4. The Bureau is required to perform this administrative responsibility fairly, reasonably and in conformity with the rules and regulations adopted to implement the Act. See Citizens for Equity v. New Jersey Dep't of Envtl. Prot., 126 N.J. 391, 397-98, 599 A.2d 507 (1991); W.V. Pangborne & Co. v. New Jersey Dep't of Transp., 116 N.J. 543, 561-62, 562 A.2d 222 (1989). This means that the Bureau must proceed without unreasonable delay in processing a claim against the Fund. See In re Arndt, 67 N.J. 432, 436, 344 A.2d 289 (1975); Hosp. Ctr. at Orange v. Guhl, 331 N.J.Super. 322, 333-34, 751 A.2d 1077 (App.Div.2000). In our view, the Bureau is also required to afford a homeowner a reasonable opportunity to correct any deficiency in the documents submitted in support of a claim rather than seizing upon such a deficiency as a basis for summary rejection of the claim.
The record supports the ALJ's finding that the Bureau failed to fairly and reasonably process appellants' claim. Sowul's initial decision to reject the claim based on appellants' purported failure to submit required documents was without any factual *925 foundation. Sowul's October 10, 1996 letter directed appellants to submit four forms of documentation:
A. Homeowner's insurance claims and responses; ... B. Records of complaints and counter claims; C. Contracts with Bharati PE, P.C. engineers-constructors; and D. Contracts with Vincent De Rosa, Inc.
On December 16, 1996, appellants sent Sowul documentation concerning an insurance claim for water damage for which they received $4,141.02 on December 11, 1996. On December 30, 1996, appellants sent Sowul a work list prepared by Bharati and on January 8, 1997, appellants sent Sowul estimates prepared by De Rosa and Gencarelli for performing the repairs on their home. On January 14, 1997, appellants sent Sowul a copy of a contract with Bharati. Moreover, according to an uncontradicted certification by appellants' counsel, he informed Sowul orally on several occasions, including in a telephone conference held on January 29, 1997, that there were no relevant complaints or counterclaims, and that appellant had not entered into a contract with De Rosa. Thus, the purported factual foundation for Sowul's February 10, 1997 summary rejection of appellants' claimthat appellants failed to submit the documentation Sowul had requested on October 10, 1996is not supported by the record. In fact, the Bureau did not even attempt at the administrative hearing to defend Sowul's decision on the basis of appellants' alleged failure to submit this required documentation, nor has the Bureau undertaken to defend Sowul's decision on this basis in its appellate brief.
Instead, although not mentioned in Sowul's February 10, 1997 letter, the Bureau defended his decision at the administrative hearing on the ground that appellants failed to submit two bid estimates by design professionals, but instead contracted with Bharati to do the design work without first obtaining the Bureau's authorization. Sowul testified that appellants were required to submit two bid estimates by design professionals, obtain the Bureau's authorization for the design professional's work, then after the design professional's work was completed, submit two bid estimates by contractors to do the actual work, and obtain the Board's authorization for that work before it could commence. Appellants' position was that they were not required to submit two estimates by design professionals or obtain the Bureau's authorization for this work. Appellants indicated it was their understanding that those requirements apply only to the building contractors' estimates for the actual repair work.
This dispute between Sowul and appellants turned on the interpretation of N.J.A.C. 5:25-5.5(e)(2), which states in pertinent part:
The amount of the award shall, in all cases, be based upon the lower or lowest of two or more bona fide estimates acceptable to the Division for the work intended to be covered. Payment shall be made jointly to the owner and to the contractor performing the work upon certification by both of them that the work is complete and the defect has been removed.... Payment shall be made only for work authorized in writing by the Department and upon completion to the Department's satisfaction.
It is not evident on the face of this regulation that a homeowner must obtain two bid estimates from design professionals, and the Bureau's authorization for the design work, before obtaining bid estimates from building contractors. In fact, the regulation does not expressly state that a homeowner must obtain the services of a design professional before obtaining bid estimates *926 from building contractors. The regulation refers solely "to the contractor performing the work," thus at least suggesting that the regulation applies only to a homeowners' contract with the building contractor who actually performs the repair work. This conclusion also seems to be supported by the one reported decision interpreting N.J.A.C. 5:25-5.5(e)(2), which does not mention any requirement that a homeowner seeking recovery from the Fund must obtain two bid estimates not only from building contractors but also design professionals. See Fisch, supra, 238 N.J.Super. at 416-18, 420-23, 570 A.2d 2.
If it is now the Bureau's policy to require a homeowner to submit two bid estimates from design professionals and obtain the Bureau's authorization for design work before seeking bid estimates from building contractors, the Bureau should adopt a suitable regulation which provides notice of this requirement to potential claimants. See Metromedia Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 328-32, 478 A.2d 742 (1984).[2] However, such a requirement may not be imposed on an ad hoc basis by an individual inspector, as apparently occurred in this case.
Moreover, Sowul's October 10, 1996, letter informing appellants that his inspection had revealed major structural defects covered by the warranty did not state that appellants had to obtain two bid estimates from design professionals. Although the "work list" accompanying Sowul's letter set forth items of work to be performed by a "licensed design professional," it did not state that appellants had to obtain two bid estimates from design professionals, as well as the Bureau's authorization for that work, before obtaining bid estimates from building contractors. To the contrary, Sowul's letter seemed to indicate that appellants only had to obtain bid estimates from building contractors, stating that:
The State Plan will now assume the responsibility to pay for having the warranted defect corrected. Enclosed copies of the Work List are to be used by you to obtain a minimum of two (2) bids from independent contractors. See enclosed letter for instructions concerning bids and method of payment. When the bids are obtained, they are to be forwarded to this office for review. Upon approval you will be authorized to have the work done.
Sowul's statement that "[u]pon approval" of one of the bids from "independent contractors," "you will be authorized to have the work done[,]" would seem to indicate that once such authorization was obtained, appellants could proceed with the repairs rather than simply being authorized to obtain bid estimates from building contractors.
Appellants indicated that this was their understanding of Sowul's letter by their December 30, 1996 response to him, which transmitted plans for proposed repairs, a work list, a structural observation report, structural calculations and a general cost estimate prepared by their design professional, and informed Sowul they would be using these documents to obtain bids from building contractors. This understanding was reinforced by appellants' January 8, 1997, letter, which transmitted to Sowul bid estimates by two building contractors.
Although Sowul sent appellants a letter on January 22, 1997, which stated that the Bureau had reviewed "the bid ... for work to correct the items of defect" and *927 concluded that "the bid prices for the items on the work list dated October 10, 1996 are EXCESSIVELY HIGH AND UNACCEPTABLE for the amount of work involved[,]" the record indicates that appellants understood this letter to refer to the two bid estimates by building contractors that they had transmitted to Sowul on January 8, 1997, rather than the contract with the design engineer, Bharati, that they transmitted to him on January 14, 1997. It was not until the January 29, 1997 telephone conference with appellants' attorneys that Sowul indicated that he interpreted N.J.A.C. 5:25-5.5(e)(2) to require appellants to obtain the Bureau's authorization for the design work before obtaining bid estimates from building contractors and that his January 22, 1997 letter referred to the Bharati contract.
In any event, regardless of whether Sowul's January 22, 1997, letter referred to the estimates of the two building contractors or the Bharati contract, Sowul's letter also informed appellants they would be allowed forty-five days to submit additional bids. Therefore, when Sowul summarily rejected appellants' claim for unrelated reasons only nineteen days later, appellants clearly had not been afforded sufficient time to correct this purported deficiency in their submission to the Bureau. Consequently, even if N.J.A.C. 5:25-5.5(e)(2) could be read to require the submission of two bid estimates by design professionals, and appellants had been provided adequate notice of this requirement, appellants' failure to provide those estimates by February 10, 1997, could not justify the Bureau's summary rejection of their claim. Therefore, as the ALJ found, this administrative action was patently arbitrary and unreasonable.
The Bureau's arbitrary treatment of appellants' claim continued after the Bureau agreed to reopen the claim and conduct the follow-up inspection that appellants had requested on November 8, 1996. Although Sowul conducted this inspection on July 9, 1997, and found significant additional major structural defects, the Bureau failed to provide appellants with a report of Sowul's findings regarding that inspection until more than a year and half later on the first day of the hearing before the OAL.
On August 11, 1997, appellants' attorney wrote a letter to the Deputy Attorney General representing the Bureau complaining about Sowul's failure to send appellants an inspection report or take other action regarding their claim. This letter stated in part:
Further our telephone conference on Wednesday, August 6, 1997, it is my understanding that you have directed Mr. Sowul to withhold completion and/or transmittal of his report on the site inspection conducted on July 9, 1997. As you know, we had been awaiting Mr. Sowul's amended and supplemental report in order to determine the next step in the process of getting the Lakhani family back into their home.
While this issue remains unresolved, our clients' home continues in its present gutted uninhabitable state. Our clients have been displaced from their home for just short of one year, having heeded the warning of a structural engineer that the home was unsafe to continue to live in. Since that time, the Lakhanis have been living in temporary quarters. Obviously, not being able to reside in the family home has caused a multitude of problems for the Lakhani family. To exacerbate those problems, Mr. Lakhani was diagnosed with severe coronary problems and underwent major open heart surgery on April 16, 1997. Undoubtedly, our immediate focus is on *928 getting the Lakhani family back into their home as quickly as possible.
In order to permit the work to move forward, we are asking that you address the matter with your client immediately. We are seeking your client's consent to permit the construction process to be completed, allowing the Lakhanis to once again live in their home free of any worry about the structural integrity of the home. In the interest of fairness to the Lakhanis and in the hopes of continued cooperation in resolving all the issues in this matter, we respectfully request this request be granted immediately thus obviating the necessity for appeal to the Appellate Division.
Our second request herein is for the release of Mr. Sowul's amended findings and report together with the photographs taken on the second site visit. Presumably, Mr. Sowul has prepared a work list similar in nature to that which he prepared on or about November 10, 1996, with regard to the first portion of the claim we submitted.
Despite this plea, the Bureau still did not provide the report of Sowul's second inspection to appellants. The Bureau's reasons for withholding this report are unclear. At one point in the administrative hearing, Sowul indicated that he was instructed by the Attorney General's office not to release this report and at another point Sowul suggested that he was guided by instructions from his superiors. In any event, the Bureau has not attempted to justify its failure to release Sowul's report, and the only conclusion we can draw is that this failure was simply the culmination of a series of arbitrary actions in the Bureau's processing of appellants' claim.
Whatever may have been the Bureau's reasons for failing to provide appellants with a copy of Sowul's second inspection report, appellants' inability to review this inspection report deprived them of the opportunity to correct the defects found by Sowul in accordance with the Bureau's procedures. Consequently, sometime after January 1998, desperate to reoccupy their home, appellants contracted with De Rosa to repair the defects without the Bureau's approval.
The primary basis of the ALJ's recommended decision adopted by the Commissioner was that appellants were disqualified from obtaining payment from the Fund for repair of the major structural defects in their home because they undertook those repairs without prior authorization from the Bureau. This decision was based on the part of N.J.A.C. 5:25-5.5(e)(2), which provides that "[p]ayment shall be made only for work authorized in writing by the Department and upon completion to the Department's satisfaction." The ALJ concluded that this regulation, as construed in Fisch, required the denial of appellants' claim "no matter how protracted and tortuous" the process resulting from the Bureau's arbitrary actions "and regardless of any considerations of fairness."
The ALJ's conclusion rests on a fundamental misreading of our opinion in Fisch. Although we upheld the validity of the part of N.J.A.C. 5:25-5.5(e)(2) which requires a homeowner to obtain the Bureau's authorization before entering into a contract for covered repairs, Fisch, supra, 238 N.J.Super. at 420-21, 570 A.2d 2, we did not say that the Bureau can prevent a homeowner from obtaining such authorization by processing a claim in an arbitrary manner and then invoke this requirement as the basis for denying the claim. In Fisch, the homeowners had "persistently failed to follow the regulation requirements for an orderly disposition of their claim[.]" 238 N.J.Super. at 420, 570 *929 A.2d 2. Under those circumstances, we concluded that there was "nothing inequitable or unfair" in the denial of the homeowners' claim based on their failure to obtain the Bureau's approval of their building contractor's estimate of repair costs. Id. at 423, 570 A.2d 2. In contrast, appellants diligently attempted for more than a year and a half to comply with the regulations governing the new home warranty program, but were prevented by the Bureau's arbitrary actions from obtaining prior authorization for the work required to reoccupy their home. Under these circumstances, it was unreasonable for the Commissioner to uphold the denial of appellants' claim on the ground that appellants eventually decided to proceed with the repairs without first obtaining the Bureau's authorization.
The ALJ's recommended decision also rested on the alternative ground that appellants "have not proven that the contested defects were `major structural defects' as that term is defined by law." However, the Bureau's own inspector, Sowul, found "major structural defects" covered by the warranty in both his first and second inspections. Furthermore, Sowul expressed the opinion that the reasonable cost of correcting those structural defects would be $50,000 to $60,000. Therefore, there was no basis for the ALJ's total rejection of appellants' claims based on insufficiency of evidence. At a minimum, appellants should have been awarded the amount of damages that Sowul found to be covered by the warranty.
Moreover, the ALJ failed to consider all the evidence presented at the administrative hearing in making his findings of fact and conclusions of law. The ALJ's initial decision issued on July 31, 2000, recites that the hearing was held on March 25 and 26, May 13, and December 22, 1999, and that the only two witnesses who testified at the hearing were Sowul on behalf of the Bureau and Bharati on behalf of the appellants. However, the record before us reveals that three additional days of hearing were conducted on May 14, August 17, and October 7, 1999, for which no transcripts were prepared and which the ALJ apparently did not recall when he prepared his initial decision. On October 7, 1999, Frugis testified on behalf of the Bureau and Mr. Lakhani and Tim De Rosa testified on behalf of appellants. De Rosa testified that all the work set forth in the proposal his company submitted to appellants was necessary to repair the major structural defects in their home and consequential damages resulting from those defects, and that his company submitted a second estimate to appellants for other work. Because the ALJ did not have the transcript of the hearing at which De Rosa testified, he did not consider De Rosa's testimony in finding that appellants failed to show that there were other major structural defects in appellants' home in addition to those identified by Sowul. Consequently, the case must be remanded for the ALJ to make recommended findings of fact and conclusions of law concerning the amount appellants are entitled to recover from the Fund based on all the evidence in the record.
Accordingly, the final decision of the Commissioner of Community Affairs is reversed and the case is remanded for further proceedings in conformity with this opinion. The remand shall be completed within 120 days. Jurisdiction is not retained.
NOTES
[1] A builder also has the option of participating in an approved alternate private home security plan, N.J.S.A. 46:3B-5; N.J.S.A. 46:3B-8.
[2] In determining whether such a requirement is appropriate, the Bureau should consider whether the Bureau's review of the estimate of a homeowner's design professional is of sufficient importance in the administration of the Act to justify the additional time that may be consumed by this multi-step process.